MAUREEN MACMILLEN, APPELLANT, v. A. H. ROBINS COMPANY, INC., APPELLEE.

348 N.W.2d 869

Filed May 11, 1984. No. 83-383.

Thomas J. Jenkins, and A. James McArthur of McArthur, Lamb, Lyford, Gilmore & Janssen, for appellant.

Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is an appeal in a products liability action brought by Maureen MacMillen against A. H. Robins Company, Inc. (Robins), the manufacturer of an intrauterine contraceptive device known as a "Dalkon Shield." The trial court sustained the defendant's demurrer and dismissed the amended petition. The plaintiff appeals.

The amended petition alleged that the Dalkon Shield, which was designed for permanent implantation into the uterus by a physician to prevent conception, was unsafe for its intended use. The plaintiff alleged that in March of 1971 she was implanted with a Dalkon Shield and that in November of 1978 her physician found that she had an abscess and infection in her uterus and she underwent an abdominal hysterectomy with bilateral oophorectomy. The plaintiff further alleged that her injury was caused by the defects in the Dalkon Shield and that the defendant had concealed information regarding the dangers of use of the Dalkon Shield.

The defendant filed a demurrer alleging that the plaintiff did not have capacity to sue and that any cause of action was barred by the statute of limitations.

The applicable statute of limitations, Neb. Rev. Stat. § 25-224 (Cum. Supp. 1982), provides:

(1) All product liability actions, except one governed by subsection (5) of this section, shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs.

(2) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed by section 2-725, Uniform Commercial Code or by subsection (5) of this section, shall be commenced within ten years after the date when the product which allegedly caused

the personal injury, death, or damage was first sold or leased for use or consumption.

(3) The limitations contained in subsection (1), (2), or (5) of this section shall not be applicable to indemnity or contribution actions brought by a manufacturer or seller of a product against a person who is or may be liable to such manufacturer or seller for all or any portion of any judgment rendered against a manufacturer or seller.

(4) Notwithstanding the provisions of subsections (1) and (2) of this section, any cause of action or claim which any person may have on July 22, 1978, may be brought not later than two years following such date.

(5) Any action to recover damages based on injury allegedly resulting from exposure to asbestos composed of chrysotile, amosite, crocidolite, tremolite, anthrophyllite, actinolite, or any combination thereof, shall be commenced within four years after the injured person has been informed of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos as described herein, or within four years after the discovery of facts which would reasonably lead to such discovery, whichever is earlier. No action commenced under this subsection based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer unless such seller is also the manufacturer of such product or the manufacturer of the part thereof claimed to be defective. Nothing in this subsection shall be construed to permit an action to be brought based on an injury described in this subsection discovered more than two years prior to August 30, 1981.

The first petition in the present case was filed on October 29, 1982, within 4 years after the injury occurred, but more than 10 years after the date of the sale of the product. The trial court sustained a demurrer to the first petition because the petition had been filed more than 10 years after the date of sale.

The amended petition was then filed alleging that the defendant had intentionally withheld information from the public regarding the dangers inherent in the use of the Dalkon Shield. A demurrer to the amended petition was sustained and the amended petition dismissed.

The plaintiff has assigned as error the sustaining of the demurrer to the amended petition, and has made several arguments in support of this assignment. We discuss only the issue raised by the allegations that the defendant deliberately concealed information regarding danger from use of the Dalkon Shield.

A demurrer admits all well-pleaded facts. *Almarez v. Hartmann*, 211 Neb. 243, 318 N.W.2d 98 (1982).

The issue to be determined is whether the defendant is estopped from raising the statute of limitations as a defense because defendant fraudulently concealed its knowledge of the dangerousness of the Dalkon Shield. In *Rucker v. Ward*, 131 Neb. 25, 33, 267 N.W. 191, 195 (1936), we said, " 'One who wrongfully conceals a material fact necessary to the accrual of a cause of action against him, and such concealment causes the opposite party to delay the filing of suit, cannot avail himself of the statutes of limitation as a defense;'. . . ." In *Luther v. Sohl*, 186 Neb. 119, 121, 181 N.W.2d 268, 269 (1970), we stated that "estoppel may be applied to prevent a fraudulent or inequitable resort to a statute of limitations." We also stated that "if a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel." *Id*. at 122, 181 N.W.2d at 270.

*Knaysi v. A. H. Robins Co.*, 679 F.2d 1366 (11th Cir. 1982), is similar to the present case. In that case Knaysi alleged that her spontaneous septic abortion was caused by the Dalkon Shield and that Robins had concealed its knowledge that septic abortions occurred in connection with the use of the Dalkon Shield. The eleventh circuit reversed the trial court's grant of summary judgment, which was made on the basis that the action was time barred. The eleventh circuit held that Knaysi had adequately pleaded facts which, if proven, could constitute an equitable estoppel to raising the statute of limitations as a defense. The court stated at 1370:

> Having determined that the facts alleged could, if proved, estop Robins from pleading the bar of the statute of limitations, we further conclude that the issue of equitable estoppel was one inappropriate for summary judgment as there exist genuine issues of material fact to be resolved at trial. First, there are obvious questions of fact regarding the alleged misrepresentations made by Robins. In *Dupuis v. Van Natten*, 61 A.D.2d 293, 402 N.Y.S.2d 242 (1978), the Appellate Division, affirming the trial court's holding that triable issues of fact precluded entry of summary judgment for defendant, noted the ''bona fide issues of fact concerning the alleged misrepresentations which resulted in plaintiffs' failure to institute a timely action.'' *Id.* at 295, 402 N.Y.S.2d at 243.

In addition, the highest state court in New York recently has endorsed the notion that the plaintiff's due diligence in bringing suit must ''be demonstrated by the plaintiff when he seeks the shelter of the doctrine [of equitable estoppel].'' *Simcuski v. Saeli*, 44 N.Y.2d at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263. The Court of Appeals went on to state: ''Whether in any particular instance the plaintiff will have discharged his responsibility of due diligence in

this regard must necessarily depend on all the relevant circumstances. . . . *It is not* possible or *appropriate*, however, on the present motion [to dismiss] addressed to the pleading, . . . to determine whether this plaintiff met her obligation of due diligence when she instituted the present action . . . ." *Id.* (emphasis added). Other cases in the New York courts echo the conclusion that the question of a plaintiff's due diligence is a question of fact unsuited for summary judgment. In *Renz v. Beeman*, a diversity action in which New York law governed, the Second Circuit opined "that the test for timely knowledge under the doctrine of equitable estoppel is similar to that set forth with regard to fraud in CPLR § 213(8) — 'could with reasonable diligence have discovered it.' " 589 F.2d at 751-52. In *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 144 N.E.2d 78, 165 N.Y.S.2d 107 (1957), a fraud action, the New York Court of Appeals elaborated on this reasonable diligence test and the inappropriateness of summary disposition: "[T]he plaintiffs will be held to have discovered the fraud when it is established that they were possessed of knowledge of facts from which it could be reasonably inferred, that is, inferred from facts which indicate the alleged fraud. Ordinarily such an inquiry presents a mixed question of law and fact . . . and, where it does not conclusively appear that the plaintiffs had knowledge of facts of that nature a complaint *should not be dismissed on motion.*" *Id.* at 326, 144 N.E.2d at 80-81, 165 N.Y.S.2d at 111 (citations omitted) (emphasis added). *See also Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214 N.Y.S.2d 849 (1961), *appeal dismissed*, 11 N.Y.2d 754, 181 N.E.2d 629, 226 N.Y.S.2d 692 (1962) (motion to dismiss should be denied and plaintiff permitted to litigate estoppel issue). In light of these cases we must conclude that the

> Knaysis' diligence in pursuing their claims against Robins is a triable issue of fact in this case.

(Emphasis in original.)

The defendant argues that our decision in *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982), prevents a plaintiff from separating her claims so that the products liability statute of limitations would apply to some of them while a more favorable fraud statute of limitations would apply to other claims. The plaintiff does not contend that the fraud statute applies. The plaintiff argues that the defendant's fraudulent conduct has estopped it from asserting the products liability statute of limitations.

*Colton, supra,* was based upon our decision in *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964), in which we held that fraudulent representations by a physician as to previous negligence or as to the plaintiff's condition do not convert the cause of action from one of malpractice to one of deceit. This rule is not applicable where the action is not founded upon professional negligence. The rationale underlying the rule of *Stacey v. Pantano, supra,* is inapplicable to the facts in this case.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

KRIVOSHA, C.J., concurring.

For reasons more specifically set out in my separate concurrence in *Sacchi v. Blodig*, 215 Neb. 817, 341 N.W.2d 326 (1983), I concur in the result reached by the majority in this case. I continue to adhere to the view, however, that any effort by the Legislature to bar a cause of action, regardless of the period of time, prior to that time when an individual knew or with the exercise of reasonable diligence could know that he or she had suffered injury or damage, would be a denial of both state and federal constitutional rights.

WHITE, J., joins in this concurrence.