KELLY KLOSURE, INC., A NEBRASKA CORPORATION, APPELLANT, V.
JOHNSON GRANT & CO., A PARTNERSHIP, APPELLEE.

427 N.W.2d 44

Filed August 5, 1988.   No. 85-1013.

Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Wiseman, Thomsen, Holtorf & Boggy, for appellant.

Philip M. Aitken and Tyler J. Sutton, of Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiff, Kelly Klosure, Inc., a Nebraska corporation, filed a petition seeking damages from defendant, Johnson Grant & Co., an accounting partnership, for alleged malpractice in connection with accounting services rendered by defendant to Kelly Klosure. The petition was filed on July 15, 1982, and generally sought damages arising out of the formation of, and the performance of accounting services with regard to, a domestic international sales corporation, commonly referred to as a DISC. Plaintiff, aided and advised by defendant, had formed a Nebraska corporation, Kelly Klosure DISC, Inc., for the sole purpose of obtaining exemption from income taxes relating to the sale of products in commerce outside the United States.

In its second amended petition, filed October 22, 1984, plaintiff alleged that as a result of defendant's malpractice, plaintiff was unable to obtain the favorable tax benefits of a DISC because Kelly Klosure DISC, Inc., did not qualify under the Internal Revenue Code. The second amended petition sought damages for the tax years of Kelly Klosure DISC, Inc., ending April 30 of 1978, 1979, 1980, 1981, and 1982. The petition further alleged that plaintiff "first acquired knowledge of the aforementioned negligence of the defendant . . . on or about May 13, 1982," and that the plaintiff had not discovered and could not have reasonably discovered the negligence any sooner.

In its answer, defendant admitted that it had done accounting work for plaintiff for some time prior to 1977 up through March of 1981; generally denied any negligence; and raised certain affirmative defenses, including the allegation that plaintiff's cause of action, if any, was "barred by the applicable statute of limitations of the Statutes of Nebraska."

The case was tried to a jury between September 9 and 20, 1985. By agreement of the parties, the case was first submitted to the jury on special interrogatories. In the instructions submitted to the jury on the special interrogatories, the court divided plaintiff's claims against defendant into two: claim 1 for the tax year 1977-78; and claim 2 for the tax years 1978-79, 1979-80, and 1980-81. In answering these interrogatories, the jury found that plaintiff had proved its case and defendant had not proved its affirmative defenses in connection with plaintiff's claims 1 and 2.

The jury also found that defendant was estopped from asserting the defense of the statute of limitations because defendant had wrongfully concealed facts which, if known, would have caused plaintiff to file its action at a date before it did. The jury also determined that the plaintiff would reasonably have discovered the appropriate facts enabling it to discover defendant's alleged malpractice in October 1981.

No instructions and no special interrogatories as to liability or damages were submitted for the tax year 1981-82. Appellant does not claim any error in that action of the court, and issues concerning that tax year are not before this court.

After the return of the special interrogatories, the issue of damages was submitted to the jury by "Special Interrogatories - Damages." In these damages interrogatories, the jury was asked to assess damages for two periods, tax year 1977-78 and tax year 1978-79. No submission was made as to tax year 1980-81, and no claim of error is made in that connection. In its brief herein, and its reply brief, plaintiff prays only for the reinstatement of the jury verdict rendered. A new trial is not sought. The issues before this court are involved only with the tax year 1977-78, for which the jury determined the damages were $60,928, and 1978-79, for which period the jury determined the damages to be $9,004. The jury also determined additional damages for legal and accounting expenses in the amount of $6,499, resulting in a total verdict of $76,431.

After the verdict was returned, defendant filed a motion for judgment notwithstanding the verdict. The court sustained the motion and entered judgment for defendant. Plaintiff timely appealed, and in this court assigns two errors: (1) "[T]he Trial Court erred in granting appellee's Motion for Judgment Notwithstanding the Verdict"; and (2) "The Trial Court erred in its application of the Statute of Limitations to the facts in the case at bar." We affirm.

The record shows the following. Plaintiff is a manufacturing firm located in Fremont, Nebraska. Defendant is an accounting firm which provided accounting services for plaintiff such as preparing tax returns, compiling financial reports, and giving tax advice. In the early months of 1977, plaintiff considered forming a DISC. In general, a DISC is a domestic corporation whose profit from exports may be partially sheltered from imposition of income tax. These profits may be sheltered until the stockholders decide to withdraw the profits. In the instant case, for the purpose of saving income taxes due to the special tax treatment of a DISC, plaintiff formed a wholly-owned subsidiary corporation entitled "Kelly Klosure DISC, Inc." (hereinafter Kelly DISC). Kelly DISC was a paper corporation with the same officers as Kelly Klosure, Inc. Separate books and records were kept for Kelly DISC by employees of Kelly Klosure, Inc. Kelly DISC's first tax year ended April 30, 1978.

In order to qualify for the benefits for a tax year, Kelly DISC needed to satisfy five requirements with respect to that tax year. One of these requirements was the "qualified export assets test," which required that at the close of the tax year, the adjusted basis of Kelly DISC's qualified export assets must be at least 95 percent of the adjusted basis of Kelly DISC's total assets. Qualified export assets include such items as inventory facilities, accounts receivable, bank deposits, and loans to the parent corporation called "producer loans." In order for a loan from Kelly DISC to the parent corporation to qualify as a producer loan, and thus be a qualified export asset, the loan must meet four tests. One of these tests is that the obligation must be evidenced by a note with a stated maturity date not more than 5 years from the date of the loan. I.R.C. § 993(d)(1)(B) (1976). Kelly DISC failed to meet this test because the notes used to evidence the producer loans did not have a stated maturity date.

Bruce Hocking, an employee and partner of defendant partnership, met with plaintiff's board of directors in the early months of 1977 to discuss the desirability and details for setting up a DISC. Shortly thereafter, Ronald Kellogg, president of plaintiff, informed defendant that plaintiff would proceed with setting up a Kelly DISC. Hocking prepared the necessary documents and forwarded them to Kellogg for signing and filing.

When the parent Kelly Klosure, Inc., desired to borrow funds from Kelly DISC, through producer loans, at various times during the 1977-78 tax year, Kelly Klosure personnel prepared the producer loan note forms. The notes were made payable "on demand" rather than due and payable within 5 years. There is a dispute in the record, but the jury apparently determined that Hocking did not advise plaintiff that the notes on producer loans must have a stated maturity date and must be made payable within 5 years.

In the summer of 1979, an Internal Revenue Service (IRS) agent began an audit of Kelly DISC's 1977-78 income tax return. The agent found that the producer loan notes had no stated maturity date, and therefore did not qualify as "qualified export assets." Without the producer loan notes qualifying as

export assets, Kelly DISC failed to meet the 95-percent test (i.e., qualified export assets were less than 95 percent of total assets). The agent contended that this disqualified Kelly DISC for special tax treatments, and Kelly DISC's earnings, otherwise tax-deferred, became taxable to Kelly Klosure, Inc. Hocking failed in his challenge of the IRS' position on the producer loan issue.

In January of 1981, plaintiff employed a new accounting firm, Touche Ross & Co., and on August 20, 1981, plaintiff terminated defendant's services as accountants.

Plaintiff's two general assignments of error do not pinpoint, to any degree, the particular errors alleged to have been committed by the trial court. The first is a "generalized and vague" assertion that does "not advise this court of the issues submitted for decision. Such advice is a necessary function of valid assignments of error." *Coyle v. Janssen*, 212 Neb. 785, 786, 326 N.W.2d 44, 45 (1982). The first general assignment of error will be considered only with respect to the decision of the court, holding, in effect, that there was no evidence to support the jury finding in favor of plaintiff.

The second assignment of error is also general in nature, but the statute of limitations question is dispositive of this appeal, and plaintiff's position on the dispositive point may be determined from the argument and propositions of law set out in plaintiff's brief.

Plaintiff states in its brief at 19, "It is the position of the appellant herein that the appellee is estopped from raising the Statute of Limitations as a bar to any of the causes of action of the appellant herein . . . due to the inequitable and fraudulent conduct of appellee."

Plaintiff also states in its brief, at 31,

> However, it is the position of the appellant that the "continuous treatment" theory does in fact apply, and the Statute of Limitations should have been tolled until that relationship terminated, or until the representation of the appellant by Johnson Grant ended with regard to the DISC for the first fiscal year.

Before addressing the two specific contentions made by plaintiff on the statute of limitations issue, we must consider the

general problem presented on the limitations issue in this case. Neb. Rev. Stat. § 25-222 (Reissue 1985) provides in pertinent part:

> Any action to recover damages based on alleged professional negligence . . . shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

Due to the two contentions it makes on the statute of limitations question, plaintiff does not set out any particular "alleged act or omission in rendering or failure to render professional services" in connection with either the tax year 1977-78 (claim 1) or the tax year 1978-79 (claim 2).

Defendant, on the other hand, contends claim 1 had to be filed within 2 years after April 30, 1978. Defendant's position is that its negligence, if any, must be considered as completed when the tax year is completed on April 30, 1978. We note that Kelly DISC's income tax return for this period was filed on January 15, 1979. From the facts in the record before us, it is apparent that the latest possible date of any negligence committed by defendant in connection with claim 1 was January 15, 1979. Plaintiff therefore had to file its petition on that claim by January 15, 1981. Plaintiff did not file its petition against defendant until July 15, 1982. Plaintiff has not filed within the 2-year period of § 25-222. If its action is not to be considered time-barred, therefore, plaintiff must show that its action falls within the exceptions in § 25-222 as to its discovery of defendant's alleged negligence or that defendant's alleged act or omission constituting negligence occurred at a later date than suggested above.

Similarly, with regard to claim 2, defendant's position is that its negligence, if any, during that period had to be completed at the end of the tax year 1978-79, ending on April 30, 1979. Kelly

DISC's return for that period was filed on January 15, 1980, and defendant's negligence would have been completed on that date. As stated above, this action was filed on July 15, 1982, and again, if plaintiff's action is not to be considered barred by the 2-year statute of limitations as to claim 2, plaintiff must bring itself under the "continuous treatment" theory. It must be noted that in setting out the above possible dates, we do not determine the actual date on which defendant's alleged negligence occurred, but only determine that under any set of facts made apparent to us, more than 2 years elapsed between any negligent act or omission of defendant and the filing of the petition herein.

In determining if plaintiff has established that the 2-year statute of limitations should not bar its claims, we first consider plaintiff's position that defendant is estopped from availing itself of the defense of the statute. Plaintiff relies on our holding in *MacMillen v. A. H. Robins Co.*, 217 Neb. 338, 341, 348 N.W.2d 869, 871 (1984), where we quoted with approval earlier Nebraska cases stating: " ' "One who wrongfully conceals a material fact necessary to the accrual of a cause of action against him, and such concealment causes the opposite party to delay the filing of suit, cannot avail himself of the statutes of limitation as a defense . . . ." ' "

We adhere to that holding, but we recognize that the *MacMillen* opinion goes on to quote with approval at length from *Knaysi v. A. H. Robins Co.*, 679 F.2d 1366 (11th Cir. 1982), to the effect that

> "plaintiff's due diligence in bringing suit must 'be demonstrated by the plaintiff when he seeks the shelter of the doctrine [of equitable estoppel].' *Simcuski v. Saeli*, 44 N.Y.2d at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263. The Court of Appeals went on to state: 'Whether in any particular instance the plaintiff will have discharged his responsibility of due diligence in this regard must necessarily depend on all the relevant circumstances. . . .' "

*MacMillen, supra* at 342-43, 348 N.W.2d at 872.

We have held that "[t]he burden of proof rests on the party who pleads an estoppel to establish the facts upon which the

estoppel is based." *Redick v. Redick*, 220 Neb. 86, 92, 368 N.W.2d 463, 467 (1985).

In the case at bar, the question whether defendant was estopped from asserting the affirmative defense of the statute of limitations by its conduct was submitted to the jury in the form of a special interrogatory. No objection was made by either party to this procedure, and it was done, in effect, at their request. The jury determined defendant was estopped from availing itself of the defense and that plaintiff could not discover defendant's negligence until October 1981.

In its ruling granting defendant's motion for judgment notwithstanding the verdict, the trial court necessarily held that the determination by the jury was not supported by the facts in this case. We agree with the trial court's ruling.

The uncontroverted facts show that plaintiff's president knew of the errors constituting malpractice on the part of defendant long before July 15, 1981. Plaintiff's petition was filed July 15, 1982. The evidence shows without dispute that the plaintiff discovered defendant's negligence or "facts which would reasonably lead to such discovery" more than 1 year before it filed its petition.

The record shows that in the summer of 1979, an IRS agent took over an audit of Kelly DISC. Ronald Kellogg, the plaintiff's president, engaged Bruce Hocking to represent Kelly DISC in the matter. This service was outside the accounting and related services covered by the engagement letter (or contract) between plaintiff and defendant. Hocking's first meeting with the IRS was in September of 1979, when Hocking was told that the notes between plaintiff and Kelly DISC did not qualify as export related assets because they did not contain a stated maturity date. Hocking was not able to change this determination of the IRS. Kellogg testified that at a meeting between himself and Hocking in "mid summer" of 1980, Hocking told Kellogg that the IRS was objecting to the form of the producer notes and that the government was taking the position that Kelly DISC did not qualify for the tax purposes plaintiff was seeking.

On June 27, 1980, Kellogg wrote a letter to Hocking, enclosing a copy of a letter that Kellogg proposed to send to the

IRS. This proposed letter, prepared by Kellogg, began:

> I'm hopeful that the points which I am about to make pertaining to additional tax levies for the fiscal years 1977-78 and 1978-79 totaling $43,406 will be influential enough to consider forgiving the entire amount.
>
> Although we did not have a statement on our notes concerning termination date for our producer loans within a five year time period, the parent Kelly Klosure, Inc., did in fact pay off all producer loans during April of 1979. We complied with the law, even though we didn't comply with the technicality of the law.

This proposed letter, prepared by plaintiff's president, shows without any doubt that before June 27, 1980, plaintiff was fully aware that Kelly DISC did not constitute a properly operated DISC and that it did not qualify to accomplish the only function it was designed to accomplish—to shelter tax payments.

To maintain this suit, plaintiff established to the satisfaction of the jury that, among other things, defendant had not properly advised it as to the form of the producer notes. Before June 27, 1980, plaintiff knew that defendant had made a mistake and that that mistake was going to cost it money. Plaintiff was a highly successful corporation operating in all of the United States and overseas. It is difficult to see how a potential plaintiff could make any clearer discovery of an act of professional negligence without even considering the knowledge as only of facts "which would reasonably lead to such discovery [of professional negligence] . . . ."

The trial court did not err in granting defendant's motion for judgment notwithstanding the verdict. In so holding we have applied our holding in *Havlicek v. Desai*, 225 Neb. 222, 225, 403 N.W.2d 386, 389 (1987), where we stated:

> On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can be deduced therefrom. *Farm Bureau Life Ins.*

*Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984). A jury verdict will not be disturbed unless it is clearly wrong. *Id.*

The determination of the jury in this case was clearly wrong.

The second issue raised by plaintiff is the court's alleged wrongful application of the "continuous relationship" rule. That issue was raised in the following manner, after the evidence had been completed and before the jury was instructed. At a conference with the court, before the instruction conference, the following remarks were made:

THE COURT: It's my understanding that counsel have decided now that the judge should decide as a matter of law the issue of whether or not there was a continuous relationship or continuous so-called treatment present in this case which would tole [sic] the Statute of Limitations and that this is not a fact question that should go to the jury. Are you actually agreeing it's not a fact question?

MR. THOMSEN: Yes.

MR. SUTTON: Yes.

THE COURT: In view of this, I will rule that this aspect of the Statute of Limitation issue, that is, whether it was a continuous relationship or continuous treatment here is not present in this case and should not be an issue to the jury.

Therefore, the only issue as to connection with the Statute of Limitations is the so-called estoppel or concealment and the court will instruct, hopefully give appropriate instructions.

The record does not show any objection to this ruling, but the matter is argued in plaintiff's brief. Plaintiff here is relying on the theory relied on by the plaintiff in *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 294, 338 N.W.2d 594, 597 (1983), where we said, "Lincoln advocates adoption of rules applicable to actions for medical malpractice, i.e., the statute of limitations does not commence to run until the treatment ends." In the *Lincoln Grain* case, we determined that there was not a continuous relationship between the plaintiff and defendant. We hold that the trial court in this case clearly was correct in holding the doctrine of continuous relationship does not apply

to the case before us. Defendant's services were broken up in clearly defined segments, as discussed above. It would be improper to hold otherwise and to adopt plaintiff's position that since plaintiff had hired defendant before the year 1977 and did not terminate defendant's services until August of 1981, the plaintiff had 2 years after the termination to begin an action against defendant. In the case before us, plaintiff was bound by its knowledge as to specific facts occurring in specific timeframes. In this case, we are not concerned with an uninformed patient being treated in a medical situation. The parties here were knowledgeable business people and fully informed.

There was no error in the trial court's ruling, and the judgment is affirmed.

AFFIRMED.