NORFOLK IRON & METAL CO., A CORPORATION, SUCCESSOR IN INTEREST TO NIMCO STEEL PROCESSORS, INC., APPELLANT, V. LARRY L. BEHNKE, P.C., AND LARRY L. BEHNKE, INDIVIDUALLY, APPELLEES.

432 N.W.2d 18

Filed November 23, 1988.   No. 87-127.

David A. Domina, of Domina, Gerrard & Copple, P.C., and J. Michael Fitzgerald for appellant.

William Jay Riley, of Fitzgerald & Brown, for appellees.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and MORAN and BROWER, D. JJ.

HASTINGS, C.J.

Plaintiff has appealed from a judgment of the district court favoring the defendants, Larry L. Behnke, P.C., and Larry L. Behnke, individually, on the issue of the statute of limitations in a suit alleging professional negligence.

The plaintiff, Norfolk Iron & Metal Co., was the successor in interest to Nimco Steel Processors, Inc., having acquired the remaining 30 percent of the capital stock of Nimco by April of 1983. The Robinson family, including Richard, the president, had been and were the sole owners of Norfolk Iron. Behnke had performed certain accounting services for Nimco, including the preparation of monthly unaudited statements and regular annual audits from 1976 through June 30, 1983. It was on that latter date that Behnke last performed any services for Nimco. On July 1, 1983, Nimco was merged into Norfolk Iron.

The annual audit of the Nimco division for fiscal yearend June 30, 1984, performed by another accountant, disclosed a

scrap metal inventory shortage of approximately 27.5 million pounds (about 344 railroad carloads) valued at about $426,703. This amounted to somewhere in the neighborhood of 75 percent of its total stated inventory. The physical inventory for the 1984 annual audit was taken on July 25, 1984.

This disclosure resulted in the filing of the present lawsuit, alleging professional negligence on the part of Behnke causing a previous overstatement of the inventory. The petition in the case was filed on May 21, 1985. It was plaintiff's theory that it could not determine when the error(s) occurred producing the 1984 discovered shortage, but it claimed that Behnke's relationship was a continuing one and the fact of negligence was not discovered or discoverable until the July 25, 1984, physical inventory. Behnke denied all negligence, but specifically alleged that Nimco's inventory changed essentially from one business day to the next; that each annual audit was a distinct occurrence; and that, therefore, plaintiff's claims as to any deficiency in audits before June 30, 1983, were barred by the applicable statute of limitations.

Neb. Rev. Stat. § 25-222 (Reissue 1985) provides:

> Any action to recover damages based on alleged professional negligence . . . shall be commenced within two years next after the alleged act or omission . . . *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier . . . .

Trial of the matter was bifurcated, and following a bench trial on the affirmative defense of the statute of limitations, the court made the following findings:

(1) Each annual financial statement required a separate physical inventory, and each separate physical inventory was furnished by Behnke.

(2) Once a year Behnke went out to the yard, took measurements, verified the measurements with books and records, and checked with employees of Nimco to verify the same.

(3) Other than the monthly and annual statements, Behnke did not perform bookkeeping functions for Nimco, nor did Behnke set up, establish, or maintain Nimco's records.

(4) The inventory maintained by Nimco changed essentially from one business day to another.

(5) Each annual audit was a distinct occurrence.

The court then found that the 2-year limitation prescribed by § 25-222 is applicable and that all claims of Norfolk Iron based on any alleged negligence of Behnke that occurred prior to May 21, 1983, are barred by § 25-222. In addition, any cause of action relating to the purchase of stock from shareholders of Nimco in preparation for the merger is barred by § 25-222. Trial on the remaining claims and allegations of damages would be limited to those occurring on or after May 21, 1983.

Appellant's assignments of error may be stated generally as follows:

(1) The trial court erred in holding that § 25-222 bars the appellant's claims based on alleged acts of professional negligence committed more than 2 years before the date when suit was commenced, even though the acts were not discovered, and could not have been reasonably discovered, until less than 1 year before suit was filed.

(2) The trial court erred in failing to hold that the relationship of Behnke with Nimco was undiscoverable until less than 1 year before suit was commenced. (Appellant's contention in this regard is somewhat foggy.)

(3) The trial court erred in concluding that Behnke had made annual inspections of the physical inventory of Nimco, and in concluding that separate engagement letters were used for each year Behnke performed audits.

Upon review of a district court's judgment on the issue of the statute of limitations, the findings and decision of that court, unless clearly wrong, will not be set aside. *Georgetowne Ltd. Part. v. Geotechnical Servs., ante* p. 22, 430 N.W.2d 34 (1988); *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985).

### TWO-YEAR STATUTE OF LIMITATION PERIOD

Norfolk Iron first contends that the trial court erred in concluding that the 2-year limitation prescribed by § 25-222 applies to this case, because the cause of action was not

discovered and could not have been reasonably discovered within the 2-year period. Although Behnke argues that Norfolk Iron alleged negligence on Behnke's part only in his failure to conduct a physical inventory when performing the 1983 audit, this is not accurate. Construing paragraph 9A and E of Norfolk Iron's petition, it is quite apparent that although the alleged negligence in the year 1983 was described in greater detail, those allegations as a whole encompassed the entire period of time that Behnke provided accounting services for Nimco. Therefore, it is necessary to examine in some detail the various aspects of the trial on the issue of the statute of limitations.

Behnke was the only witness called to testify. All other evidence was presented to the trial judge in the form of exhibits, many of which were depositions. The trial judge, considering Behnke's in-court testimony as well as his deposition, the depositions of employees of Nimco, and the depositions of directors of Norfolk Iron, resolved controverted facts in favor of the appellees. The trial judge found specifically as previously stated.

Where a law action is tried to the court without a jury, the findings of the court have the effect of a verdict and will not be disturbed on appeal unless clearly wrong. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988). In an action at law tried without a jury, it is not the role of the Nebraska Supreme Court to resolve conflicts in or reweigh the evidence, and it will presume that the trial court resolved any controverted facts in favor of the successful party and will consider the evidence and permissible inferences therefrom most favorably to that party. *Id.*

The trial court's findings of fact are not clearly wrong. The following is evidence in the record that supports the trial court's findings of fact:

(1) Behnke testified at trial that each audit each year required a separate and distinct physical inventory and that he conducted a physical inventory of the scrap metal once a year. William Kralicek, Nimco's yard foreman, testified during his deposition that he remembered Behnke's coming out to look at the inventory for yearend audits, and, to the best of his recollection, Behnke was there each year he did an audit.

Additionally, during his deposition Behnke testified that during the middle of June 1983, Nimco stopped shipping to Nucor, its principal purchaser. As a consequence, Nimco had a pile of slabs that had been processed through its equipment and piled on the ground by the office. It is a fair inference that Behnke would not have known these facts unless he had actually been out in the yard and observed the slabs piled by the office.

(2) Behnke testified at trial that for the 1983 yearend audit, he went out to the Nimco yard to examine the scrap metal inventory, took measurements, verified it with the books and records of Nimco, and checked with Kralicek to verify his findings. According to Behnke, this is the same procedure he used each year he did an audit.

(3) Several people involved with Nimco, including Lois Asmus, the bookkeeper, testified in their depositions that Asmus was responsible for keeping the daily books for Nimco. In addition, from Asmus' testimony during her deposition, it is clear that Nimco's books were established before Behnke began doing work for Nimco. Asmus maintained the Nimco books, not Behnke. Behnke's monthly work included checking up on Asmus' work. If an adjustment needed to be made, Behnke pointed it out and explained it to Asmus, and the adjustment would be made. Although Behnke may have adjusted the books, that is not the same as maintaining the books.

(4) Everyone agreed that Nimco's inventory changes day to day.

(5) The finding that each annual audit was a distinct occurrence follows naturally from the preceding findings. Once an audit of a fiscal year was completed and the adjustments were made, Behnke did not go back and do further work with the Nimco books and records covering that fiscal year. Each audit covered only the transactions that occurred since the last audit. As far as numbers from the previous audit appearing in Behnke's yearend audits, he testified that they were included solely for the purpose of comparison.

The trial judge found that the 2-year limitation prescribed by § 25-222 applied to this case. Given the five findings of fact listed above and the finding that the 2-year limitation rather

than the 1-year discovery limitation applied, it can be inferred that the trial judge thought that if Behnke had been negligent throughout the 8 years he was employed by Nimco, any act of negligence could have been discovered within 2 years of the occurrence of the act. Whether a claim could have been discovered within 2 years of the occurrence of an alleged negligent act is a question of fact and, as such, will be upheld on appeal unless clearly wrong.

After the fiscal yearend financial statements were completed, Behnke gave them to the Robinsons. Richard Robinson was aware of the contents of the financial statements. Although not an onsite manager, Robinson did go to Nimco every once in a while to observe the operation. Additionally, it is clear that Robinson was capable of observing the scrap metal inventory and estimating how much was there. Robinson, therefore, had the ability to personally check the scrap metal inventory to verify Behnke's numbers. There is no allegation that Behnke concealed or attempted to conceal anything such that Robinson would not be able to discover any errors had he attempted to do some checking. Therefore, it appears that if Behnke was negligent in the performance of an audit, a claim could have been discovered within 2 years of the occurrence of that negligence. The trial court's finding that the 2-year limitation of § 25-222 applies in this case is not clearly wrong.

Norfolk Iron, citing *Tiwald v. Dewey*, 221 Neb. 547, 378 N.W.2d 671 (1985), argues that the question of when the statute of limitations began to run is a question of law to be determined by this court independently of the trial court's decision. In its brief, Norfolk Iron quotes the following, " '[T]he issue as to when the professional negligence statute of limitations began to run is a question of law.' 221 Neb. at 550." Brief for appellant at 31. By eliminating the first part of the quote, Norfolk Iron has misstated the proposition of law. In *Tiwald*, this court said, "*Since the facts in the present case are undisputed*, the issue as to when the professional negligence statute of limitations began to run is a question of law." (Emphasis supplied.) 221 Neb. at 550, 378 N.W.2d at 673. In the instant case, the facts are in dispute. Therefore, the proposition of law found in the *Tiwald* case is inapplicable.

### ONE-YEAR DISCOVERY EXCEPTION.

If the trial judge was, as Norfolk Iron contends, wrong about Norfolk Iron's claims being discoverable within 2 years of the occurrence of any alleged negligent act, then the discovery provision of § 25-222 would apply. Discovery, as applied to statutes of limitations, refers to the fact that one knows of the existence of an injury or damage and not that he or she has a legal right to seek redress in court. *Georgetowne Ltd. Part. v. Geotechnical Servs., ante* p. 22, 430 N.W.2d 34 (1988).

If the discovery exception applies, Norfolk Iron would have had to file the petition within 1 year from the date of discovery of the cause of action or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. Norfolk Iron contends that the date of discovery was in July of 1984, when a physical inventory was taken for the 1984 fiscal yearend financial statement. Therefore, according to Norfolk Iron, since the petition was filed on May 21, 1985, the suit was commenced within 1 year after discovery.

Behnke, on the other hand, contends that discovery occurred sometime in the summer of 1983, after the merger of Nimco and Norfolk Iron. He argues that Richard Robinson admits that, after the merger, he went out to Nimco and, after looking around, felt that the inventory was not there. At that point in time, according to Behnke, Norfolk Iron had discovered facts which would reasonably lead to discovery of the cause of action.

In Robinson's first deposition, the following exchange occurred:

Q When was it that it came to your attention that the shortages that you have alleged in this case may have existed?

A Well, the specific number of shortage, 400-some thousand dollars was brought to my attention during our audit after June of 84 and that's, as I stated in the interrogatories, when the exact numbers were brought to our attention. Throughout the year prior to that, I spent a lot more time at Nimco because it was now a wholly-owned subsidiary of Norfolk Iron & Metal and a part of our corporation and it became very apparent that

the inventory was not what was stated.

Q When did you first become aware that inventory was not as stated?

A The exact time would have been during some time in late July or August of 1984 during our audit when the exact numbers were given to me. It was my feeling during the year prior to that which would have been from July of 83 to—on after the merger that when I went down there that the inventory wasn't there.

Q Okay. Would you say that you had that feeling in July of 83?

A I—it wasn't a case of "Hey, it's not here." It's a case of looking, and as I spent more and more time down there after we took the corporation over, we, meaning Norfolk Iron & Metal, I spent a lot more time there and then as I spent more time there I was better able to evaluate the inventory and it became apparent over the period that it wasn't there.

. . . .

A It was just a gut feeling, just a feeling it wasn't there and it was confirmed when we audited it.

Discovery, as used in reference to a statute of limitations, means that an individual acquires knowledge of a fact which existed but which was previously unknown to the discoverer. *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985).

" 'Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts.' "

*Id*. at 42, 374 N.W.2d at 854, quoting *Baxter v. National Mtg. Loan Co.*, 128 Neb. 537, 259 N.W. 630 (1935).

Richard Robinson felt that the inventory was short. He possessed the ability to go through the yard, observe the scrap metal inventory, and estimate what was there in order to check his impression that things were not quite right. Norfolk Iron

argues that it required another certified public accountant to do a physical inventory in order to discover the shortage. Although maybe not capable of discovering the exact extent of the shortage, Robinson was capable of ascertaining for himself that a shortage existed, especially given the size of the shortage that the appellant claims existed. "Non-'discovery' of all damages is not the equivalent of nondiscovery of a cause of action as set out in § 25-222." *Suzuki v. Holthaus,* 221 Neb. 72, 76, 375 N.W.2d 126, 129 (1985).

In *Kelly Klosure v. Johnson Grant & Co.*, 229 Neb. 369, 427 N.W.2d 44 (1988), the plaintiff sued the defendant, an accounting partnership, for alleged malpractice in the performance of accounting services provided in connection with the formation of a DISC, a corporation established for the sole purpose of obtaining exemption from income taxes. The plaintiff, unable to obtain the favorable tax benefits desired because the DISC did not qualify under the Internal Revenue Code, sought damages for the tax years ending April 30 of 1978, 1979, 1980, 1981, and 1982. The plaintiff's petition, filed on July 15, 1982, alleged that plaintiff " 'first acquired knowledge of the aforementioned negligence of the defendant . . . on or about May 13, 1982,' and that the plaintiff had not discovered and could not have reasonably discovered the negligence any sooner." *Id.* at 370, 427 N.W.2d at 45.

This court found that the plaintiff's president knew about the errors constituting malpractice on the part of the defendant long before July 15, 1981. In the summer of 1979, the IRS audited Kelly DISC. In September of 1979, an employee of the defendant was informed by the IRS that the DISC did not qualify for the tax benefits the plaintiff was seeking. The plaintiff's president was told the IRS' position and the reason for it in the summer of 1980. On June 27, 1980, the plaintiff's president wrote a letter to the defendant's employee, enclosing a copy of a letter he proposed to send to the IRS. The letter shows without any doubt that before June 27, 1980, the plaintiff was fully aware that the DISC did not qualify to shelter tax payments and that the defendant had made a mistake that was going to cost the plaintiff money. This court held that the plaintiff was "bound by its knowledge as to specific facts

occurring in specific timeframes." *Id.* at 379, 427 N.W.2d at 50.

In *Georgetowne Ltd. Part. v. Geotechnical Servs., ante* p. 22, 430 N.W.2d 34 (1988), the plaintiff sued the defendant, a civil engineering firm, for professional negligence in failing to properly perform soil testing services such that settling of the plaintiff's building resulted in structural damage. After a separate trial to the court on the issue of the statute of limitations defense, the trial court found that the plaintiff's cause of action was not and could not have been reasonably discovered within 2 years from the date the defendant performed professional services for the plaintiff. Therefore, the plaintiff had 1 year from the date of discovery or the discovery of facts which would reasonably lead to such discovery, whichever was earlier, to commence its action.

On October 4, 1978, the defendant submitted to the plaintiff a written report evaluating soils and making foundation recommendations for the proposed construction of a commercial building. The building was completed by April of 1979. By February of 1982, a crack had appeared in the floor of a restaurant located in the building. The defendant was informed of this, investigated, and advised the plaintiff that the crack was not caused by settling. In March of 1983, the crack reappeared, vertical cracks appeared on the building face, and the roof would not drain water. On April 8, 1983, the plaintiff's architect advised the plaintiff that the problems were possibly caused by settlement occurring in the lower soils. On April 27, 1983, a letter from the plaintiff informed the defendant of the problems and that the plaintiff expected the defendant to take care of any damages that occurred " 'as a result of incomplete or inaccurate soil investigations . . . .' " *Ante* p. 24, 430 N.W.2d at 36. On June 14, 1983, another soil engineering firm presented to the plaintiff a report dated June 8, 1983. The plaintiff filed suit on June 7, 1984.

The trial court ruled that by April 27, 1983, the plaintiff had discovered sufficient facts to cause the statute of limitations to start running. On appeal, the plaintiff argued that the statute did not begin running until June 8, 1983, when the second engineering firm's report was completed. This court upheld the finding of the trial court that the statute of limitations began to

run on April 27, 1983. The plaintiff's letter to the defendant made it clear that the plaintiff was aware of damage to the building, attributed the damage to settling of the building, and held the defendant responsible. Discovery occurred no later than the date of the letter, not on the date the plaintiff had a report from another engineering firm.

If the 1-year discovery limitation applies to this case, the appellant filed its petition too late. Discovery did not occur in 1984, when the yearend audit confirmed Richard Robinson's suspicion that there was a shortage in the inventory and revealed the exact extent of the shortage. Discovery occurred in the summer of 1983, when Robinson first had a feeling that the inventory was short. At that point in time he was on inquiry notice. He had the means of knowledge at hand because he had the ability to check his impression. Robinson failed to make an inquiry in the summer of 1983 but is chargeable with knowledge of a shortage, since, by proper inquiry, he could have ascertained the existence of a shortage.

## CONTINUOUS RELATIONSHIP EXCEPTION

If the 2-year limitation period, not the 1-year discovery limitation, applies, then the question becomes: Is there a "continuous relationship" exception to § 25-222 such that Norfolk Iron would not be barred from raising *all* claims based on Behnke's alleged negligence, since it filed the petition within 2 years of the termination of its relationship with Behnke? Actually, there would be two issues to resolve: (1) Is there a "continuous relationship" exception, and (2) if there is such an exception, was the relationship between Behnke and Nimco the kind of relationship covered by the exception?

As recently as August of 1988, this court has acknowledged the existence of a continuous relationship doctrine. See *Kelly Klosure v. Johnson Grant & Co.*, 229 Neb. 369, 427 N.W.2d 44 (1988). Since this court does recognize a continuous relationship exception to § 25-222, does the exception apply in this case?

Norfolk Iron, in arguing that there was a continuous relationship between Nimco and Behnke, attempts to distinguish the facts of *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983), from the facts of this

case. In *Lincoln Grain*, the plaintiff sued its accountants for malpractice in the preparation of yearly audits. The trial court ruled that the 2-year statute of limitations barred some of the plaintiff's claims. On appeal, the plaintiff argued that the continuous relationship exception applied. This court stated:

> Because the inventory peculiar to a track office changed essentially from day to day without connection with any other inventory, past, present, or future, the continuity required for "continuous treatment" is nullified. The subject matter of each audit ceased to exist beyond the last day of the fiscal period being audited. The "condition" was never identical for any two audits rendered by C & L. Any audit by C & L did not refer to any prior audit, was not based on any information contained in a previous audit, did not incorporate or expand any previous audit, and was not carried forward in any form into any subsequent audit. As admitted by Lincoln's witness, each report "would stand on its own." Each audit was a separate, independent and unrelated transaction or occurrence. Consequently, in the present case the doctrine of "continuous treatment" is not available to suspend the time limit prescribed for the commencement of an action for professional negligence. . . .

> Under the circumstances of this case the statute of limitations commenced to run when C & L delivered the audit reports or financial statements to Lincoln.

(Citations omitted.) *Id.* at 295-96, 338 N.W.2d at 598.

In its brief, Norfolk Iron lists the following factors as critical differences between this case and *Lincoln Grain*:

(1) Behnke performed audits for Nimco for 8 years.

(2) While in *Lincoln Grain* engagement letters were indispensable for each of the audits rendered, an engagement letter between Behnke and Nimco was used only once.

(3) Unlike the auditors in *Lincoln Grain*, who performed no services other than auditing,

> Behnke (1) set up or revised the bookkeeping system of NIMCO, (2) reviewed and inspected its books and records monthly, (3) prepared and published all the monthly and other interim financial statements of the company (4)

consulted regularly with NIMCO personnel, and (5) did tax work. Accordingly, Behnke was truly responsible for the overall supervision, maintenance, operation and auditing of the books and records of NIMCO on a continuous basis from 1976 through fiscal year-end 1983.

Brief for appellant at 34.

(4) All of the Behnke audit reports refer to the previous year's audit.

(5) Nimco's inventory was static.

Unfortunately, the record does not support those conclusions. Evidence in the record regarding the use of engagement letters between Nimco and Behnke is virtually nonexistent. It is logical to assume that there was a letter of engagement for the first year. There is, however, no direct indication that there were no other letters of engagement between the parties for the following years. On the contrary, there is some indication of a letter of engagement for the 1983 audit. In his first deposition, Richard Robinson testified that Behnke had been contracted to do the audit performed before the merger. Behnke neither set up nor revised the bookkeeping system of Nimco. While Behnke did make a few recommendations for changes, Nimco decided whether or not the bookkeeping system should be revised and did not always follow Behnke's suggestions. Norfolk Iron's attorney conveys the impression that each audited financial statement could not have been prepared without reference to the previous one. While Behnke did include information taken from the previous year's audit, he explained that this was done strictly for comparison purposes. Use of closing entries in a previous financial statement as opening entries in the next audit does not establish a continuous relationship. Perhaps the most obvious erroneous statement of fact is the claim that Nimco's inventory was static. Everyone testified that Nimco's inventory changed daily.

While the factors that Norfolk Iron listed in its brief that do accurately represent the facts of this case do indeed constitute differences between the facts of this case and *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983), they are not differences that make a difference. In *Kelly Klosure v.*

*Johnson Grant & Co.*, 229 Neb. 369, 427 N.W.2d 44 (1988), the plaintiff, relying on *Lincoln Grain* (as does Norfolk Iron in this case) argued that, due to the "continuous relationship" rule, the statute was tolled until the relationship between the plaintiff and the defendant ended. This court disagreed, stating:

> In the *Lincoln Grain* case, we determined that there was not a continuous relationship between the plaintiff and defendant. We hold that the trial court in this case clearly was correct in holding the doctrine of continuous relationship does not apply to the case before us. Defendant's services were broken up in clearly defined segments, as discussed above. It would be improper to hold otherwise and to adopt plaintiff's position that since plaintiff had hired defendant before the year 1977 and did not terminate defendant's services until August of 1981, the plaintiff had 2 years after the termination to begin an action against defendant. In the case before us, plaintiff was bound by its knowledge as to specific facts occurring in specific timeframes. In this case, we are not concerned with an uninformed patient being treated in a medical situation. The parties here were knowledgeable business people and fully informed.

229 Neb. at 378-79, 427 N.W.2d at 50. This rationale is equally applicable in this case.

## ANNUAL INVENTORY INSPECTIONS

The appellant's third assignment of error is that the trial court erred in concluding that Behnke had made annual inspections of the physical inventory of Nimco, and in concluding that separate engagement letters were used for each year Behnke performed audits. The first half of this assignment of error relates to a factual determination that goes to the merits of Norfolk Iron's claim, not to the issue of whether or not the 2-year limitation period in § 25-222 applies to this case. Furthermore, the second half of the assignment of error simply is not correct. Nowhere in the order did the trial court make a factual finding that separate engagement letters were used for each audit.

The trial court's finding that the 2-year limitation of § 25-222 applies in this case is not clearly wrong. Even if the appellant's

claims could not have been discovered within the 2-year period, the discovery exception to § 25-222 does not help Norfolk Iron, because discovery occurred in 1983, more than a year prior to May 21, 1985, when the petition was filed. Furthermore, the running of the 2-year limitation period was not tolled until the end of the relationship between Nimco and Behnke, because their relationship was not a continuous relationship.

The judgment of the district court is affirmed.

AFFIRMED.