No. 95-1883

Steven N. Joyner                    *
and Vickie Joyner,                  *
                                    *
        Appellants,                 *
                                    *   Appeal from the United States
        v.          *               District Court for the
                                    *   District of Nebraska.
Glen A. Forney, M.D.;               *
Lawrence W. O'Holleran, M.D.;       *
and Forney, Westerbuhr              *
Surgical Associates, Inc.,          *
                                    *
        Appellees.                  *


Submitted:  November 16, 1995

Filed:  March 26, 1996


Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     In April, 1991, Steven Joyner underwent an operation to alleviate heavy bleeding from hemorrhoids and pain from a fissure (a linear ulcer) on his anus.  The following month, he underwent a second operation to drain a painful abscess that had developed in his rectum (the rectum is the lowest portion of the large intestine and ends at the anal opening). Almost immediately after the second operation, Mr. Joyner began suffering from fecal incontinence on a daily basis.  In early 1994, he underwent a third operation that corrected his fecal incontinence to a considerable extent but not totally.  Each of the three operations was performed by a different doctor.

In April, 1994, in federal district court in Nebraska, Mr. Joyner sued the doctors who performed the first two operations.  Mr. Joyner asserted claims for medical malpractice, contending that the first operation was negligently performed, that the subsequent abscess developed as a result of the first operation, that the second operation was also negligently performed, and that he suffered from a permanent impairment consequent to those two operations.  The district court granted summary judgment to the doctors (and their joint professional corporation), stating that the statute of limitations barred the suit.  Mr. Joyner appeals; we affirm the judgment of the district court.[1]

                                I.

    Under Nebraska law, and under ordinary circumstances, Mr. Joyner had to bring suit within two years "after the alleged act or omission in rendering or failing to render professional services providing the basis" for the suit.  See Neb. Rev. Stat. § 44-2828; see also Neb. Rev. Stat. § 25-222.  Mr. Joyner acknowledges that he filed his suit more than two years after May, 1991, when he underwent the second operation.  He argues, however, that the circumstances of his case allow the application of one or more of three recognized exceptions to the two-year deadline established by statute.  We consider each of those exceptions in turn.

    The statute itself states that "if the cause of action could not be reasonably discovered within [the] two-year period," a suit may be brought "within one year ... from the date of discovery of facts which would reasonably lead to such discovery."  See Neb. Rev. Stat. § 44-2828; see also Neb. Rev. Stat. § 25-222.  "Under the discovery principle, a cause of action accrues ... where

_____

    [1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

                               -2-

there has been discovery of facts ... sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.  ... It is not necessary that the plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem existed." Board of Regents of the University of Nebraska v. Wilscam Mullins Birge, Inc., 433 N.W.2d 478, 484 (Neb. 1988).  A person is on inquiry notice under Nebraska law when he or she "first [has] a feeling" that a problem may exist, if he or she has "the means of knowledge at hand" -- "the ability to check his [or her] impression ... [and thereby] ascertain[] the existence" of the problem. Norfolk Iron and Metal Co. v. Larry L. Behnke, P.C., 432 N.W.2d 18, 25 (Neb. 1988).  We believe that in this case the relevant question is when Mr. Joyner should have suspected that his condition was permanent and that improper treatment by his first two doctors was responsible for that condition and its permanence, see, e.g., Taylor v. Karrer, 244 N.W.2d 201, 203 (Neb. 1976), so that he could have learned, "with the use of reasonable diligence," whether his suspicions were true, Toman v. Creighton Memorial St. Josephs Hospital, Inc., 217 N.W.2d 484, 489 (Neb. 1974).

Mr. Joyner argues that he should not reasonably have suspected that he had a cause of action until after he consulted his third doctor and that it was not unreasonable for him to wait until August, 1993, to consult that doctor.  Mr. Joyner contends, accordingly, that the one-year post-inquiry-notice period for filing suit did not begin to run until August, 1993 (when he first consulted the third doctor), which would make timely his filing of April, 1994.

In response, the defendants assert that, as a matter of law, it was unreasonable for Mr. Joyner to wait more than a year after the second operation for improvement or to consult a third doctor and, therefore, that Mr. Joyner was on inquiry notice as of

-3-

May, 1992 -- a year after the second operation.  In citing one year as a reasonable waiting period, the defendants rely on Mr. Joyner's third doctor, who stated by affidavit that "[f]rom a medical standpoint, a year from the date of [Mr. Joyner's second operation] would not be an unreasonable period for a patient to wait to see whether bowel control returned to normal."  Mr. Joyner does not challenge that statement by his third doctor.

In light of the Nebraska case law, the essence of our task is to decide whether it was unreasonable, as a matter of law, for Mr. Joyner to wait beyond May, 1992 (allowing for a recovery period of a year subsequent to the second operation), to consult a third doctor (or, in the alternative, whether the issue of unreasonableness is sufficiently disputable to create a jury question).  Mr. Joyner contends that because of his limited education and experience in medical matters, his financial difficulties (created by his inability to work because of his medical problems), and the embarrassing nature of his condition, his reluctance to consult another doctor (and possibly to invite further surgery) was entirely reasonable.  Specifically, he argues that he is "not a person of ordinary intelligence or prudence," having left home at age 14 and having acquired only an eighth-grade education.

We are very sympathetic to Mr. Joyner's difficulties.  Even if Mr. Joyner's subjective qualities are relevant to the usually objective inquiry into reasonableness, though, we note that, according to his deposition, Mr. Joyner, who is now 37 years old, has been the successful sole proprietor of a diesel repair business for 20 years, raised cattle on 1,000 acres of his own land for at least two years of that time, operated a drilling service contemporaneously with his diesel repair service for at least part of that time, and knows how to use a home computer.  Also according to Mr. Joyner's deposition, his income before the operations was

-4-

approximately $40,000 per year, and his net worth before the operations was approximately $75,000.  Under these circumstances, we do not believe that reasonable persons could disagree about whether Mr. Joyner is "a person of ordinary intelligence or prudence."

The Nebraska Supreme Court has indicated that, even despite assurances from the surgeon that a post-operative medical condition is temporary, at some point "after the last of [the doctor's] assurances and recommendations for post-operative ... therapy," the statute of limitations begins to run.  Toman, 217 N.W.2d at 490.  In Mr. Joyner's case, all of the parties seem to agree that a year after his second operation was, as an objective matter, a reasonable time to wait to see if his fecal incontinence would cease.  Since "[n]othing had transpired" in that period "to indicate [that] progress was being made," we hold, as a matter of law, that Mr. Joyner was on inquiry notice after May, 1992.  Economy Housing Company, Inc. v. Rosenberg, 475 N.W.2d 899, 901 (Neb. 1991) (per curiam); see also Norfolk Iron, 432 N.W.2d at 22, 25.  The one-year discovery period following inquiry notice therefore expired in May, 1993.  (Although it is not necessary to our holding, we note that Mr. Joyner did consult a lawyer sometime in 1991, indicating that he may have actually suspected that medical malpractice was the cause of his difficulties.)  Since Mr. Joyner did not file suit until April, 1994, the discovery rule does not prevent the statute of limitations from barring his suit.

II.

The Nebraska courts have recognized a second exception to the statutory two-year deadline, an exception that they have described as involving the continuing treatment rule.  Under this exception, "the statute of limitations does not begin to run 'until the act complained of, and any resulting subsequent treatment therefor, is completed.'"  Healy v. Langdon, 511 N.W.2d 498, 501 (Neb. 1994),

-5-

quoting <u>Smith v. Dewey</u>, 335 N.W.2d 530, 533 (Neb. 1983) (emphasis supplied in <u>Healy</u>). "The continuous treatment doctrine applies when there has been ... a continuing course of negligent treatment." <u>Frezell v. Iwersen</u>, 436 N.W.2d 194, 198 (Neb. 1989). One of the reasons for this rule is that "[p]ost-operative treatment and advice by the physician to the patient are an interwoven and essential part of the physician-patient relationship." <u>Toman v. Creighton Memorial St. Josephs Hospital, Inc.</u>, 217 N.W.2d 484, 489 (Neb. 1974); <u>see</u> <u>also</u> <u>Williams v. Elias</u>, 1 N.W.2d 121, 124 (Neb. 1941).

Mr. Joyner asserts with respect to the continuing treatment rule that he was told by the defendants that his fecal incontinence was temporary and was likely to cease. He argues, therefore, that since his third doctor suggested that a year was a reasonable time to wait to see if the fecal incontinence did in fact cease, the two-year period for filing suit did not begin to run until May, 1992 (a year after the second operation), at the earliest, which would make timely his filing of April, 1994.

The difficulty with that argument, however, is that we see no evidence in the materials submitted to us that the post-operative treatment that Mr. Joyner received was negligent. Indeed, even if we characterize as "treatment" the doctors' requiring Mr. Joyner to wait a year to see if his fecal incontinence would cease, all of the evidence is to the effect that there was nothing negligent about requiring such a waiting period. We therefore see no basis for applying the continuing treatment rule to prevent the statute of limitations from barring Mr. Joyner's suit.

III.

The Nebraska courts have also recognized an exception to the statutory two-year deadline based on the principle of equitable estoppel (also known, usually in non-medical contexts, as

fraudulent concealment). <u>See</u>, <u>e.g.</u>, <u>Schendt v. Dewey</u>, 520 N.W.2d 541, 548 (Neb. 1994) (<u>per</u> <u>curiam</u>); <u>see</u> <u>also</u> <u>Upah v. Ancona Brothers Co.</u>, 521 N.W.2d 895, 902 (Neb. 1994).  A short description of how the equitable estoppel rule works in medical malpractice cases is that a doctor "may not lull [a patient] into a false sense of security, thereby cause the [patient] to subject his ... claim to the bar of the statute of limitations, and then plead as a defense the very delay caused by the [doctor's] conduct." <u>Hamilton v. Hamilton</u>, 496 N.W.2d 507, 512 (Neb. 1993).

Formally, the "elements of equitable estoppel ... are ... (1) conduct [by the defendant] which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the [defendant] subsequently attempts to assert; (2) the [defendant's] intention, or at least the expectation, that [the defendant's] conduct shall be acted upon by, or influence, [the plaintiff]; (3) knowledge, actual or constructive, [by the defendant] of the real facts; ... (4) lack of knowledge and of the means of knowledge [by the plaintiff] of the truth as to the facts in question; (5) reliance, in good faith, [by the plaintiff], upon the conduct or statements of the [defendant]; and (6) action or inaction [by the plaintiff] based thereon of such a character as to change the position or status of the [plaintiff], to his injury, detriment, or prejudice." <u>Jennings v. Dunning</u>, 440 N.W.2d 671, 675 (Neb. 1989).  In medical malpractice cases, the Nebraska courts have found misrepresentations about the "permanency of ... complications, [the] length of [the] recovery period, ... improper [surgical techniques]," <u>Frezell v. Iwersen</u>, 436 N.W.2d 194, 198 (Neb. 1989), and cause of a patient's death, <u>Muller v. Thaut</u>, 430 N.W.2d 884, 889 (Neb. 1988), to be material.

Mr. Joyner argues that the defendants told him, first, that his fecal incontinence was temporary (when in fact it was permanent) and, second, that the abscess and thus the need for the second operation were precipitated by some type of external contamination (when in fact they were consequent to malpractice in performing the first operation). We see no evidence, however, that tends to prove that the defendants knew either of the permanence of Mr. Joyner's condition or of any malpractice by the first doctor (and Mr. Joyner's assertions on those points contain no citations to the materials submitted to us). If the defendants did not know of those facts, the defendants could neither have lied about them to Mr. Joyner nor intended that he rely on the defendants' statements with respect to those facts. We therefore see no basis for applying the equitable estoppel rule to prevent the statute of limitations from barring Mr. Joyner's suit.

IV.

For the reasons stated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.