ATLAS CORPORATION, APPELLEE, V. A. F. MAGDANZ, APPELLANT.

FILED FEBRUARY 28, 1936.   NO. 29509.

*Leamy & Leamy,* for appellant.

*Deutsch & Young, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and REDICK and KROGER, District Judges.

REDICK, District Judge.

Action by plaintiff upon a promissory note signed by the defendants Emil Altwine and Anna Altwine and indorsed generally by the defendant A. F. Magdanz, dated February 28, 1922, for the sum of $9,000, and assigned to plaintiff by the receiver of the Citizens State Bank of Pierce, Nebraska.

The petition alleges that said note was executed and indorsed as above stated, was due three years after date, and was payable to the defendant A. F. Magdanz, and that upon the date of its execution said note was duly sold, indorsed and delivered to the Citizens State Bank of Pierce by the said Magdanz, and that the bank thereupon became the owner and holder thereof; that a number of payments were made upon said note by Magdanz, the maturity of said note being extended for two years at the dates of said payments respectively and indorsed on the back of the note, the last indorsement being "Int. paid to February 28, 1929; note extended to February 28, 1931, at 6 per cent. per annum" in the handwriting of defendant Magdanz. The petition further alleges that at all times defendant Magdanz was the managing officer of said bank, and that said note was made and delivered by the defendants Altwine to the defendant Magdanz for his accommodation only, and that the Altwines received nothing for said note; and that they executed the same upon the express representation that defendant Magdanz was prohibited from borrowing from said bank; that all payments upon said note were made by defendant Magdanz and were indorsed thereon by him; that prior to October 6, 1930, Magdanz fraudulently and unlawfully wrote the words "without recourse" above his said indorsement. The petition further alleges that on October 6, 1930, the Citizens State Bank of Pierce was closed by the banking department and receiver took possession thereof on October 7, and relied upon the indorsement of the defendant Magdanz as being without recourse and did not discover that said words had been fraudulently added to the indorsement until August, 1934; that at the time of the execution of said notes the Altwines executed a real estate mortgage to Magdanz to secure the same, which the latter assigned and transferred to the bank, but said assignment was not placed of record, and on October 6, 1930, without any authority from said bank, for the purpose of defrauding said bank and its creditors and assignees, released said mortgage upon the margin of the record. The petition

further alleges that said note was duly sold and assigned to plaintiff's assignor by the receiver of said bank on the 16th day of May, 1934, by indorsement without recourse, and that plaintiff is now owner and holder of said note and there is now due thereon the sum of $4,500, together with interest from February 28, 1929, at 6 per cent. per annum, and plaintiff prays judgment for the sum of $5,982.75, with interest.

The defendant Altwine answered and admitted all the allegations of the petition, but alleged that said note was given by the Altwines to the defendant Magdanz without any consideration and solely for his accommodation and to provide the means of securing a loan from the Citizens State Bank by means of his indorsement to it; that said Magdanz received all of the consideration for said note from said bank, and that such note was loaned to the said defendant Magdanz without consideration and solely for his accommodation, and upon his promise to take up and pay the same, and that, as between these answering defendants and the said defendant Magdanz, the latter is primarily liable for said obligation and these answering defendants are liable only as sureties. The defendant Anna Altwine pleaded coverture and was dismissed from the action. Defendants prayed judgment that said Magdanz was primarily liable on said note and that the Altwines were secondarily liable.

Defendant Magdanz answered said petition, and denied every allegation thereof not specifically admitted, and alleged that the cause of action upon said note did not accrue within five years next before the commencement of this action (August 17, 1934) ; that the purported extensions of the time of payment of said note were not to be performed within one year, were not in writing or subscribed by defendant. Defendant, further answering, admits the execution of the note and the indorsement by him on the back thereof, but alleges that said note was executed to the Citizens State Bank in the name of defendant as an officer of said bank in accordance with the custom of said bank to

take notes secured by real estate mortgages in the name of an officer of the bank as a matter of convenience; that defendant was never the owner and holder of said note, and that his indorsement thereof was entirely without consideration and merely for the purpose of transferring the title to said bank; that said mortgage was executed to defendant solely as an officer of and for the benefit of said bank. Defendant further alleges that the several payments made and indorsed upon said note were made from the proceeds of the income of said mortgaged real estate; admits the execution of the release of the mortgage on the margin of the record, but alleges that said mortgage was of no value on account of prior liens.

Plaintiff replied to the answer of defendant Magdanz, putting in issue the allegations thereof and repeating, in substance, the allegations of the petition.

Trial was had to a jury, which resulted in a verdict for the plaintiff against the defendant Magdanz in the sum of $6,057.75, and a special finding that the note in question was an accommodation note. Judgment was thereupon entered for plaintiff against defendant Magdanz and Emil Altwine for $6,057.75, and that Emil Altwine was an accommodation maker, and that Magdanz was primarily and Altwine secondarily liable thereon. From an order overruling the motion for a new trial, defendant Magdanz appeals.

The question for determination is whether or not the evidence is sufficient to support the verdict of the jury, which arises on appellant's first assignment of error that the court erred in overruling the motion of defendant Magdanz for a directed verdict at the close of all the evidence.

It appears from the evidence without dispute that one Tonner was vice-president and defendant Magdanz cashier of the Citizens State Bank of Pierce from the time of its organization in 1914 until it failed October 6, 1930, and that they managed and controlled the affairs of the bank; that in 1920 Altwine purchased from Magdanz and Tonner a farm of 200 acres for the sum of $45,000 or $46,000, upon

which land there were two mortgages, one for $10,000 to the Federal Land Bank and one for $20,750 given by the defendant Magdanz to one Chilvers, the remainder being paid in cash by the liquidation of a mortgage on other land held by Altwine. In the fall of 1921 Altwine came to the conclusion that the encumbrances and expenses connected with the carrying on of the farm were beyond his ability and sought to arrange with Magdanz and the bank to take a conveyance of the land in satisfaction of his indebtedness to the bank represented by a note for $6,693.23 secured by a third mortgage upon the land, and two smaller notes, the entire indebtedness to the bank aggregating $7,714.84. As a result of negotiations to that end, on February 28, 1922, Altwine and his wife came to the bank at Pierce and there met Magdanz and Tonner, and Altwine and wife testified that it was thereupon agreed that the Altwines should execute a deed for the land in satisfaction of their indebtedness to the bank. The deed was executed to and delivered to Magdanz and three notes representing his entire indebtedness to the bank were delivered to Altwine. At the same time and as a part of the same transaction the Altwines executed to Magdanz the note in suit for $9,000, dated February 28, 1922, and due in three years, and a mortgage to secure the same upon the land. It is claimed by Altwine, and he so testifies, that this last note and mortgage were executed purely for the accommodation of Magdanz, who stated that he wanted to put the note in the bank to take the place of the land and that Altwine would never be called upon to pay it. The claim of Magdanz with reference to this transaction, and he so testifies, is that the note in question was given in renewal of the three notes delivered to Altwine, and that the deed to the land and the note in suit, together with the mortgage securing the same, were taken in the name of Magdanz merely as an officer of the bank and for convenience in accordance with a custom of the bank in dealing with notes secured by real estate mortgages. It further appears from the evidence that Altwine remained upon the land for a period of about seven

years as tenant of Magdanz under a written lease at a rental payable part in cash and part in a share of the crop, and that Altwine paid the rent in full, while he occupied the premises, to Magdanz. After the giving of the note and mortgage, Altwine transacted no business with the Citizens State Bank except to maintain a small checking account, but transferred his business to another bank in Pierce. Altwine never paid any payments upon the note in suit and never received any notice from the bank calling for the payment of interest or principal on the note, and considered that all his indebtedness to the bank had been satisfied by the conveyance. March 1, 1922, Magdanz credited upon the back of the note $1,285.16 which reduced the note from $9,000 to $7,714.84, the exact amount of principal and interest due the bank from Altwine on that date, and from time to time thereafter, from March 21, 1923, until April 24, 1928, made payments upon the note which were credited thereon by Magdanz in his own handwriting, which reduced the principal to $4,500. Magdanz testifies that these payments were all made from rentals received from Altwine. It appears, however, that the crops delivered on account of rent were delivered to Magdanz at his farm adjoining the Altwine place and the major portion thereof fed to Magdanz' stock. He testifies, however, that he made a fair accounting to the bank of the crop receipts and made more out of them than could have been secured by sale upon the market. The day or day before the bank failed, October 6, 1930, Magdanz inserted the words "without recourse" over his indorsement on the note in question, which he says was done at the suggestion of the bank examiner. After the bank closed and the receiver took possession, Magdanz made no further payments upon the note, the last indorsement being for interest to February 28, 1929, retained possession of the rents and profits of the farm, and finally conveyed the same to one Friederich in satisfaction of the note and mortgage which he (Magdanz) had given upon the land, the principal of which was $20,-750, and of which Friederich had become the owner. If

the position now taken by Magdanz is correct—that the note in question and the mortgage securing it and the title to the land were taken in his name merely for convenience, the real ownership being in the bank—then he convicts himself of converting the assets of the bank to his own use and defrauding the bank and its creditors. The question presented to the jury was whether the note in question was given for the accommodation of Magdanz or in renewal of Altwine's debt to the bank. The evidence is in direct conflict and in our opinion was sufficient to support a finding either way. The jury found against the appellant.

. The transcript of the evidence as contained in the bill of exceptions has been read with great care and we have no hesitation in announcing our conclusion that the questions involved entitled the plaintiff and appellee to the judgment of a jury under our system of judicature and that the verdict of the jury is sustained by sufficient evidence and ought not to be disturbed.

It is contended, however, by appellant that the action is barred by statute of limitations because not brought within five years from date of last payment upon the note, February 28, 1929, suit having been commenced August 17, 1934. The indorsement in question was in the handwriting of Magdanz and in these words: "Int. paid to Feb. 28, 1929; note extended to Feb. 28, 1931." Similar extensions in Magdanz' handwriting were made to February 28, 1927, and to February 28, 1929. The claim of appellant is that these extensions, not being signed by Magdanz, and not to be performed within one year, are void under the statute of frauds.

It was held in *Farmers Life Ins. Co. v. Wolters,* 10 S. W. (2d) (Tex. Com. App.) 698, that "Payee's indorsement on back of note extending time of payment, together with signature on face of instrument, constituted signed agreement for extension of maturity date so as to take case out of statute of frauds." Without deciding this point, we are of opinion that Magdanz is estopped as against the bank and its assignee to plead either the statute of frauds or limita-

tions. Magdanz was cashier and active manager of the bank. He had charge of the note as such officer and it was his duty to enforce payment when due, or report the situation to the board of directors for instructions. Instead of performing his duty, he made the indorsements and thereby concealed the fact that the note was due. He should not now be permitted to take advantage of his own wrong.

In *Harrisburg Bank v. Forster,* 8 Watts (Pa.) 12, it was held that a cashier of a bank was estopped to plead the statute of limitations in an action upon notes signed by him, unless it already appeared that he had performed all his duties in relation to the note in exhibiting the same as due and unpaid to the board of directors. So in *Livermore Falls Trust & Banking Co. v. Riley,* 108 Me. 17, 78 Atl. 980, the court held that a director was likewise estopped from setting up the statute of limitations in an action upon a note signed by him on account of his position as a trustee whose duty it was to collect the note at maturity. Further citation of authorities is unnecessary as the proposition of estoppel seems self-evident. Plaintiff pleaded that defendant Magdanz was estopped by the indorsements on the note to plead the statutes.

Appellant urges that the court erred in submitting the question whether the note was an accommodation note, asserting that the note in suit was executed for a consideration; but the theory of plaintiff is that Altwine executed the deed in payment of his debt to the bank, and the evidence tends to support that claim. If Altwine satisfied his debt by the conveyance, then there was no consideration moving to him for the note in suit. The question was properly submitted and the jury accepted plaintiff's theory.

Error is assigned because by instruction 10 the jury were told to find for plaintiff if they found from the evidence that Magdanz was the owner of the note and indorsed it to the bank for a consideration, for the reason that there was no evidence that Magdanz received any consideration from the bank. It is probable that this instruction placed upon plaintiff too great a burden, but of this appellant can-

not complain. If the note was signed for the accommodation of Magdanz, what he did with it was of no importance to Altwine as between him and Magdanz, although Altwine would be liable as surety to the bank which had surrendered his other notes. The evidence seems to establish the position as follows: Altwine deeded his equity in the land for his notes at the bank. The deed was taken in the name of Magdanz, and, to replace the notes and keep the real estate out of the bank, a new note was given by Altwine to Magdanz and indorsed by him to the bank. By this means Magdanz got title to the land and retained it, together with the rents and profits. True, he made payments on the note, but these payments were just as consistent with his liability as the accommodated payee as with any liability of Altwine. What was Altwine's position? He gave up title and possession of the land for the notes. Had he not made the deed he could have kept possession until foreclosed, perhaps one to three years; but, having deeded, he paid full rent. If now required to pay his notes, without recourse upon Magdanz, he will have gained nothing by the transaction but will have lost the value of the possession of the land for several years. What is Magdanz' position? He got title and possession of the land enabling him to reduce the note upon which he was indorser to $4,500; also the rents and profits from the land from February, 1929, to the date of his conveyance to Friederich, in September, 1931, whereby he got rid of an indebtedness of over $20,750. The only loser by the transaction is the bank or its assignee, unless recovery may be had against Magdanz.

A number of other errors are alleged and we have examined them but find no ground for reversal established.

The judgment of the district court is correct and is affirmed.

AFFIRMED.