MARVIN HAMMOND, APPELLANT, V. CITY OF BROKEN BOW, APPELLEE.

476 N.W.2d 822

Filed November 8, 1991.    No. 89-457.

Steven O. Stumpff, of Stumpff Law Office, for appellant.

Jerry L. Pigsley, of Heron, Burchette, Ruckert & Rothwell, for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Hastings, C.J.

This is an appeal by the plaintiff, Marvin Hammond, from a judgment entered in his favor and against the defendant, City of Broken Bow, following a bench trial. The plaintiff originally sought damages in excess of $10,000 for back wages. The trial court awarded him damages in the amount of $818.80, setting off $97.50 in costs, as the judgment was less than the defendant's earlier offer of judgment. Broken Bow does not cross-appeal.

A suit under an employment contract is an action at law, and this court will overturn factual findings of the trial court only if they are clearly wrong. *Brown v. Clayton Brokerage Co.*, 238 Neb. 646, 472 N.W.2d 381 (1991).

Hammond was originally hired by Broken Bow on August 16, 1974. He worked in Broken Bow's powerplant until April 1, 1981, when he was transferred to the city's water department. Hammond was transferred because of three incidents of damage to powerplant equipment resulting from his failure to properly operate it.. Hammond was transferred back to the powerplant on April 15, 1986.

Since 1979, Broken Bow has employed a military-style pay scale system. This system is embodied in two ordinances, one entitled "Pay Levels for City Employees" (pay-level ordinance) and the other entitled "Hourly and Per Annum Rates and Steps" (rates-and-steps ordinance). These ordinances were enacted in 1979, in conjunction with the city's 1979-80 appropriation ordinance.

The ordinances set out seven pay grades, designated BBS 3 through BBS 9. Each of the pay grades is subdivided into 10 numbered levels. The pay-level ordinance establishes a range of pay grades and levels for each of a variety of positions. The pay-level ordinance provides pay levels for powerplant operators ranging from grade BBS 7, level 1 (BBS 7-1), to BBS 7-10, and for water department workers from BBS 5-1 to BBS 6-10. The copy of that ordinance received in evidence contained a handwritten notation, "Power Plant Assistant starting at

BBS6 level 1 to BBS6 level 4." Apparently, the board of public works added this classification and passed a motion to recommend it to the city council, which recommendation might have affected the amount of Hammond's entitlement. However, it was never submitted to the city council and consequently was never adopted. The rates-and-steps ordinance sets an hourly wage for each pay grade and level, and provides a schedule of intervals at which an employee will be eligible for salary review.

In addition to the pay-level and rates-and-steps ordinances, Broken Bow passed appropriation ordinances yearly between 1980 and 1988. Each appropriation ordinance from 1982 forward authorized pay levels and wages for each Broken Bow employee in a section headed "Pay Increases to Officials and Employees." The 1986-87 appropriation ordinance was passed on August 19, 1986. The "Pay Increases to Officials and Employees" section of this ordinance authorizes a powerplant operator position to be paid at "BBS5-Level 3 $5.98." Neither this nor any of the appropriation ordinances contain any explicit language repealing any former ordinance, nor do any contain any sections remotely resembling the pay-level or rates-and-steps ordinances.

Upon Hammond's transfer to the water department, he was demoted from BBS 7-7 to BBS 4-4. Hammond agreed to that pay reduction. Broken Bow twice upgraded Hammond's classification while he worked at the water department, to BBS 4-5 on August 1, 1981, and to BBS 5-3 on January 1, 1982. The city did not upgrade Hammond's classification again until January 1, 1987, when he was promoted to BBS 5-4.

Hammond met with the board of public works on November 23, 1987, to formally complain about various wage claims against Broken Bow. The board denied the claims on January 11, 1988. Hammond filed a claim with the Broken Bow City Council March 22, 1988.

Hammond initiated this case on January 25, 1988, making essentially two claims for backpay. The first claim was based upon Broken Bow's alleged misclassification of Hammond at pay grades and levels lower than those authorized by the pay-level ordinance. Essentially, Hammond alleged he was

entitled to minimum pay levels of BBS 5-1 during his tenure at the water department and BBS 7-1 following his return to the powerplant. The second claim was based upon Broken Bow's failure to promote Hammond through the various pay levels at the intervals indicated in the rates-and-steps ordinance. Hammond claimed such "wage level increase[s]" were mandatory. He sought damages, costs, attorney fees, and a grant to schools equal in amount to the damages awarded.

Hammond's petition claimed this relief under the Nebraska Wage Payment and Collection Act (NWPCA). See Neb. Rev. Stat. §§ 48-1228 et seq. (Reissue 1984). Upon Broken Bow's motion, the district court struck the portion of Hammond's petition including any claims for relief based on the NWPCA on the grounds that the NWPCA does not apply to political subdivisions. The district court also struck his claim for costs on the grounds that the petition did not plead compliance with Neb. Rev. Stat. § 17-714 (Reissue 1987).

Hammond filed an amended petition on March 21, 1988, alleging that he presented a claim to the Broken Bow City Council on March 18, 1988. The amended petition did not plead the NWPCA and sought damages and costs. The district court struck the allegations regarding presentment of the claim to the city council, ruling that the facts alleged occurred after the filing of the petition and therefore should have been raised by supplemental pleadings pursuant to Neb. Rev. Stat. § 25-856 (Reissue 1989).

After the district court granted Hammond's motion to supplement the pleadings, he filed his second amended petition on June 23, 1988. Hammond repeated his allegation that he presented a claim to the Broken Bow City Council on March 18, 1988, and claimed damages, an adjustment to his retirement benefits and Social Security earnings, interest, and costs. The second amended petition did not plead the NWPCA.

Following a trial on the second amended petition, the district court, on March 27, 1989, entered judgment and issued written findings. The court held that Broken Bow misclassified Hammond as BBS 5-3 and later BBS 5-4 after his return to the powerplant, when the pay-level ordinance mandated a minimum of BBS 7-1 for Hammond's position. The court

limited this recovery to the period between Hammond's return to the powerplant and the enactment of the 1986-87 appropriation ordinance, which the court held amended the pay-level ordinance by implication to authorize a BBS 5-3 level for powerplant operators. The court also ruled that Hammond was misclassified between April 1, 1981, and January 1, 1982, at the water department, but that this claim was barred by the statute of limitations, "even assuming a written contract." The court denied Hammond recovery for wage increases during his tenure at the water department, ruling that these increases were merit-based, not mandatory. The court awarded Hammond costs for the period after he filed his claim with the city council. The court denied Hammond interest on the grounds that the claim was unliquidated.

Hammond's motion for new trial was overruled, and he has brought this appeal.

The plaintiff assigns as error that (1) the trial court erred in ruling that the 1986-87 appropriation ordinance repealed the pay-level ordinance by implication; (2) the court erred in denying damages for periodic wage-level increases; (3) the court erred in applying the statute of limitations for written contract actions; (4) the court erred in denying costs for the period prior to Hammond's filing of a claim with the city council, pursuant to § 17-714; (5) the court erred in denying prejudgment interest; and (6) the court erred in ruling the NWPCA inapplicable to political subdivisions.

The trial court denied Hammond damages for lost wages after the passage of the 1986-87 appropriation ordinance on the theory that such ordinance repealed the pay-level ordinance by implication.

A city of the second class, such as Broken Bow, can repeal an ordinance only by enacting a later ordinance which contains the entire text, as amended, of the earlier ordinance or section being amended, along with a statement that the earlier version is repealed. See Neb. Rev. Stat. § 17-614 (Reissue 1987) ("no ordinance or section thereof shall be revised or amended unless the new ordinance contains the entire ordinance or section as revised or amended"). The "Pay Increases to Officials and Employees" section of the 1986-87 appropriation ordinance

does not establish any pay ranges for particular positions, as does the pay-level ordinance, nor does it provide wage rates and salary review intervals, as does the rates-and-steps ordinance. The appropriation ordinance contains no reference, to either the pay-level or rates-and-steps ordinance, stating that either earlier ordinance is repealed. Any repeal of the two earlier ordinances effected by the 1986-87 appropriation ordinance must be implicit, since the appropriation ordinance does not conform to § 17-614.

Repeals by implication are not favored and will not be found unless the intent of the legislative body makes another construction of the two statutes or ordinances in question untenable. *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 471 N.W.2d 398 (1991). Repeal by implication requires that the later statute or ordinance be unavoidably repugnant to the earlier statute or ordinance. *Id.* Therefore, in order to find a repeal by implication in this case, this court must find that the intent of the Broken Bow City Council in enacting the 1986-87 appropriation ordinance was to create a pay system, the basic tenets of which are unavoidably repugnant to the existing system embodied in the pay-level and rates-and-steps ordinances.

The most obvious intent of the 1986-87 appropriation ordinance is to appropriate funds for the operation of Broken Bow's municipal government for that fiscal year. The ordinance is headed "City of Broken Bow, Nebraska[,] Ordinance No. 771 *Annual Appropriation Bill* 1986-87." (Emphasis supplied.) The preamble characterizes it as "[a]n ordinance to appropriate the sums of money deemed necessary to defray all the necessary expenses and liabilities of the City of Broken Bow, Nebraska," and nowhere mentions an intent to create a comprehensive pay scale or to repeal any earlier ordinance. The character of the ordinance is further made evident by repeated references on its face to the fiscal period beginning on August 1, 1986, and ending on July 31, 1987.

Moreover, the context in which the 1986-87 appropriation bill was enacted indicated that it was never intended to repeal the pay-level and rates-and-steps ordinances. The pay-level and rates-and-steps ordinances were enacted along with the 1979-80

appropriation ordinance. After that time, Broken Bow enacted no less than nine appropriation ordinances, none of which—the 1986-87 ordinance included—provided in any way for a new pay scheme or for the explicit repeal of the old one. The temporal limitation to the current fiscal year inherent in each appropriation ordinance, and the city council's failure to include in each appropriation ordinance the pay-scale information that the pay-level and rates-and-steps ordinances contain, combine to indicate that the pay-level and rates-and-steps ordinances were intended to be permanent, with the funds to be paid out thereunder provided by annual appropriation.

It seems to be Broken Bow's argument that in enacting the 1986-87 appropriation ordinance, the city intended to abolish starting salary guidelines for all positions, maximum salary guidelines for all positions, and all merit- or seniority-based salary increases—and all without ever once expressing an explicit intent to do so. This position is contradicted by the testimony of several city officials at trial. Both the city clerk and the utility superintendent described in detail Broken Bow's procedure for salary review and advancement, using the system established by the rates-and-steps ordinance. The mayor testified that the pay-level ordinance was followed by the city in paying its employees. He also described a system for salary review and advancement substantially identical to that established by the rates-and-steps ordinance. The testimony of these officials leads to the conclusion that if Broken Bow ever intended that the 1986-87 appropriation ordinance establish a comprehensive pay system superseding the one embodied in the pay-level and rates-and-steps ordinances, this intent never manifested itself until the appellate stage of this litigation.

While this court has never faced this particular question before, a reading of similar cases from other jurisdictions is helpful. In *United States v. Langston*, 118 U.S. 389, 6 S. Ct. 1185, 30 L. Ed. 164 (1886), Langston, the U.S. Minister to Haiti, sued the government for backpay. A statute set the salary for the Minister to Haiti at $7,500 per year. Later appropriations bills granted only $5,000 per year to pay the position. The court refused to find that the appropriation

legislation had repealed by implication the earlier statute setting a salary of $7,500 and upheld Langston's recovery where the appropriation bills "contained no words that expressly or by clear implication modified or repealed the previous law." 118 U.S. at 394. Accord, *Coleman v. Kansas City*, 348 Mo. 916, 924, 156 S.W.2d 644, 647 (1941) (an "appropriation ordinance [which] contained no words expressly amending or repealing the salary ordinance, nor . . . any words implying an intent to do so," did not repeal an earlier salary ordinance); *American Fed. of Gov. Emp., AFL-CIO v. Campbell*, 659 F.2d 157 (D.C. Cir. 1980) (distinguished from *Langston* on the basis that the appropriation bill in question there specifically referred to and limited earlier legislation setting salaries).

In light of the record as a whole, the general disfavor of repeal by implication, and the legislative command that municipalities make repeals of ordinances explicit, see § 17-614, the proper construction of the 1986-87 appropriation ordinance is solely as appropriation legislation, intended to leave the pay-level and rates-and-steps ordinances intact.

The trial court erred in holding that the appropriation ordinance repealed the pay-scheme ordinances by implication and in limiting Hammond's recovery on that basis.

Regarding the denial of periodic wage increases, Hammond claimed in his second amended petition that he was entitled to automatic wage-level increases every 6 months, both while at the water department and after his return to the powerplant. The trial court held that the evidence showed that pay increases available under the rates-and-steps ordinance were merit-based and not automatic.

On appeal, Hammond does not dispute this ruling. Rather, he now claims that he was denied periodic *review* for salary increases. However, nowhere in Hammond's second amended petition is it either stated or implied that his theory of recovery is based upon mandatory periodic salary review. Rather, that petition refers to Hammond's entitlement to wage increases. Furthermore, the damages calculation attached to the second amended petition bases its tallies upon "automatic 6-month raise[s]." Where a particular theory of the case is not stated in a plaintiff's petition, he or she cannot raise it for the first time on

appeal. *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985).

After changing his theory of recovery from automatic salary *increases* to automatic salary *review*, Hammond now argues that Broken Bow could conclusively have shown proper periodic salary review by presenting the testimony of the person who conducted these reviews. However, nothing in Hammond's petition put Broken Bow on notice that such testimony would be necessary. The city would have been completely justified in going to trial prepared only to defend against the theory that Hammond was entitled to automatic pay increases, since that is the only theory he pled. He cannot now be permitted to change that theory.

In his third assignment of error, Hammond claims the district court denied recovery for wages lost before January 25, 1983, 5 years before Hammond filed his petition, because of the statute of limitations. That is a misinterpretation of the court's ruling. The district court held that plaintiff was not entitled to lost wages from January 1, 1982, to April 15, 1986, because he was not substantively entitled to automatic pay increases, not because of the statute of limitations.

Hammond complains that the court denied him costs for the period prior to his presentation of his claim to the Broken Bow City Council. Section 17-714 prohibits the recovery of costs if the claim is not properly presented. The court found that Hammond first filed a claim with the Broken Bow City Council, as required by § 17-714, on March 22, 1988. He now argues that he is entitled to costs dating back to November 1987, when, he says, he substantially complied with § 17-714 by filing a claim with the Broken Bow Board of Public Works. (He also claims that the NWPCA creates a right to costs independent of § 17-714, but Hammond failed to preserve error regarding the applicability of the NWPCA.)

Plaintiff relies on *Olson v. County of Lancaster*, 230 Neb. 904, 434 N.W.2d 307 (1989), to support his argument that filing a claim with the Broken Bow Board of Public Works satisfied the requirements of § 17-714 that "[a]ll claims against the city . . . . must be presented to the council . . . in writing, with a full account of the items, and no claim or demand shall be audited

or allowed unless presented as provided for in this section."

In *Olson*, the plaintiff filed a claim directly with the county board, pursuant to the terms of a rental contract, rather than with the county clerk, as the claims statute for counties required. See Neb. Rev. Stat. § 23-135 (Reissue 1987). This court stated as follows:

> The purpose of the county claims statute . . . is to ensure that the board has proper notice of claims against the county. . . . [T]he filing requirement "provides the county with full information of the rights asserted against it, and enables it to make proper investigation concerning the merits of claims against it and to settle those of merit without the expense of litigation."

(Citations omitted.) *Olson, supra* at 908, 434 N.W.2d at 309.

Here, the claim Hammond filed with the board of public works fulfilled none of the purposes enumerated in *Olson*. The duties of the board as defined in Broken Bow's ordinances are "to operate any utility owned by [Broken Bow] and to exercise all powers conferred by law upon [Broken Bow] for the operation of utilities." The board is not empowered to investigate or settle claims, nor instructed to be a conduit for claims to the city council. The presentation of a claim to the board of public works did not facilitate the purported purpose of the claims statute: the avoidance of needless litigation through the settling of claims. Therefore, Hammond's presentation of his claim to the board of public works was not substantial compliance with § 17-714, and this assignment of error is without merit.

Regarding Hammond's claim for prejudgment interest, the district court held that the claim was unliquidated, and therefore denied interest. As to his claims accruing on or after January 1, 1987, as of that date Neb. Rev. Stat. § 45-103.04 (Reissue 1988) went into effect and precluded claims for prejudgment interest against political subdivisions.

However, as to any claims accruing before January 1, 1987, Hammond's entitlement to prejudgment interest depends upon whether the claim is liquidated or unliquidated. See, *Fletcher v. Mathew*, 233 Neb. 853, 448 N.W.2d 576 (1989); Neb. Rev. Stat. §§ 45-103.01 et seq. (Reissue 1988).

The question which must be answered is whether Hammond's claim for wages based on his misclassification—the only one of his claims upon which he was substantively entitled to recover—between April 15, 1986, and January 1, 1987, was a liquidated claim. "A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Fletcher, supra* at 862, 448 N.W.2d at 583. The pay-level ordinance and Hammond's pay records, both of which were prepared by the City of Broken Bow, provided the bases for the district court's damages determination.

While Broken Bow contends that the amount of recovery was disputed, Broken Bow did not introduce any evidence at trial that indicated that a different basis for calculating back wages existed; it merely contended that Hammond was not entitled to recover beyond August 19, 1986. Since there was no conflicting evidence regarding the amount of damages, there was no need for the trial court to apply its discretion. Hammond's claim was liquidated, and the court erred in not granting prejudgment interest on the misclassification claim for the period between April 15, 1986, and January 1, 1987.

Finally, Hammond asserts that the district court erred in striking the prayer for relief under the NWPCA from his petition. After that allegation was stricken from his petition, Hammond filed an amended and a second amended petition, neither of which pled the NWPCA. These subsequent filings preclude Hammond from claiming error in the granting of the city's motion to strike allegations regarding NWPCA. See *Raskey v. Michelin Tire Corp.*, 223 Neb. 520, 391 N.W.2d 123 (1986) (filing an amended petition after a successful demurrer waived error in the sustaining of the demurrer). This assignment of error has been waived by the action of Hammond.

The district court erred in holding that Broken Bow's pay-level and rates-and-steps ordinances were repealed by implication by the 1986-87 appropriation ordinance, and in ruling that Hammond could not recover prejudgment interest on part of the damages he was or may be awarded.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.