ROBERT W. HAMILTON, JR., APPELLEE, V. HAMAKO HAMILTON, APPELLANT.

496 N.W.2d 507

Filed March 5, 1993.   No. S-91-461.

Richard A. Knudsen, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

Larry F. Fugit for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

The respondent-appellant former wife, Hamako Hamilton, seeks to modify the decree which dissolved her marriage to the petitioner-appellee former husband, Robert W. Hamilton, Jr., so as to require the husband to pay additional alimony and to share with her an interest in his retirement pay. The district court granted the husband's motion for summary judgment. In challenging that ruling, the wife asserts, in summary, that the district court erred in determining that she was foreclosed from modification as a matter of law. We affirm.

When the parties were married on March 7, 1957, the husband was a member of the U.S. Air Force. By the time the marriage of the parties was dissolved in Sarpy County on March 28, 1980, the husband had retired from the Air Force and became entitled to retirement pay under the provisions of 10 U.S.C. § 1401 et seq. (1988).

The dissolution decree, which incorporated the parties' property settlement agreement, provides, in relevant part:

Husband will pay the [w]ife the sum of $600.00 per month for a period of two years from the date of the entry of the Decree herein; the [h]usband will then pay the [w]ife the sum of $550.00 per month for the next two years and for the remaining six years and three months which is until [w]ife reaches the age of 62, [h]usband will pay [w]ife the sum of $500.00 per month for permanent alimony.

Although the decree awards no part of the husband's retirement pay to the wife, it does provide that should the husband become ill and unable to work full time, the alimony payments shall not exceed "one-half of the amount of [h]usband's Air Force Retirement at the time of such illness . . . ."

Anticipating the termination of alimony upon her upcoming 62nd birthday, the wife sought social security benefits in May 1990 and at that time learned that she would not qualify under her husband's social security fund until he reached the age of 65 in February 1996. She thereafter, on May 31, 1990, filed the petition in this proceeding.

The Sarpy County Sheriff received the summons issued in connection therewith on June 1, 1990. According to his return, the sheriff first attempted to serve the husband on June 2. Having been unsuccessful in that effort and in efforts made on June 3 and 5, he remitted the summons unserved. The husband was ultimately served with process in Maine on July 27, 1990.

Notwithstanding the recitation in the sheriff's return that no attempt was made to serve the summons until June 2, one affiant swore that the husband was aware "service of process had been attempted on him at his home . . . on or before June 1, 1990." According to the same affiant, the husband wished to leave for a vacation and had been "advised to get out of town as soon as possible" so this action could be delayed until he returned from Maine in August. Although the record discloses that the husband had departed Nebraska for Maine by June 4, 1990, it does not disclose when he left Nebraska.

Neb. Rev. Stat. § 42-365 (Reissue 1988) provides, in relevant part: "Unless amounts have accrued prior to the date of service of process on a petition to modify, orders for alimony may be

modified or revoked for good cause shown . . . ." The obligor in *Welke v. Welke*, 205 Neb. 426, 288 N.W.2d 41 (1980), had been ordered to pay alimony in monthly installments such that his entire obligations had accrued by January 1, 1978. The obligee thereafter, in June 1978, filed an application for modification. Service of process upon the obligor was obtained on June 21 of the same year. We held that because the entire amount of alimony had accrued prior to the date of service upon the obligor, § 42-365 prevented the award of additional alimony. *Welke* thus teaches that a decree under which all rights and obligations have accrued is not subject to modification in any respect.

As a preliminary matter, it must be recalled that the decree in this case requires that the alimony payments commence "from the date of the entry of the [d]ecree." As the decree was entered on March 28, 1980, the last payment would have accrued 123 months later, or on May 28, 1990, 3 days before the wife filed her petition in this proceeding. At first blush, it thus would appear § 42-365 would foreclose any modification of the decree, because the wife's petition would not have been filed until after all of her rights and obligations and all of the husband's rights and obligations would have accrued; as a consequence, the husband could not, under any circumstance, have been served in time.

Although the wife suggests the apparent change in due dates was produced by Neb. Rev. Stat. § 42-369(1) (Cum. Supp. 1992), which provides that alimony judgments are to commence on the first day of each month, such is not the case. Not only did § 42-369(1) not come into effect until August 26, 1983, 1983 Neb. Laws, L.B. 371, § 11, more than 3 years after the decree in question was entered, the statutory provision is merely directory, not mandatory. See *Cotton v. Cotton*, 222 Neb. 306, 383 N.W.2d 739 (1986).

However, notwithstanding that the record contains no order modifying the due dates of the monthly alimony payments, the parties have handled this case as if the last payment became due on June 1, 1990, and the payment record of the clerk of the district court suggests that the district court itself so dealt with the case. Under those circumstances and because such treat-

ment makes no difference to the outcome, we too consider the decree as having been amended by some event not disclosed by the record such as to make the last alimony payment due June 1, 1990, 1 day after the wife filed this action.

The threshold question therefore is whether any modification is nonetheless foreclosed as a matter of law, as even under the amended decree, all rights and obligations had accrued before the husband was served with process. According to the wife, the answer is in the negative. She contends that the crucial date, notwithstanding the language of § 42-365, is the date of filing of the petition seeking modification, not the date service of process was achieved. In taking that position, she argues that the service language of § 42-365 has been repealed by implication as a result of amendments to Neb. Rev. Stat. § 25-217 (Reissue 1989).

She points out that although at one time § 25-217 provided that an action was deemed commenced as of the date the summons was served upon the defendant, § 25-217 (Reissue 1975), in 1979 it was amended to provide that an action be deemed to have been commenced "on the date the petition is filed with the court if proper service is obtained within six months of such filing." 1979 Neb. Laws, L.B. 510. Later, by 1986 Neb. Laws, L.B. 529, § 21, § 25-217 was again amended to read as it does today. "An action is commenced on the date the petition is filed with the court. The action shall stand dismissed without prejudice as to any defendant not served within six months from the date the petition was filed."

But repeals by implication are not favored, *Hammond v. City of Broken Bow*, 239 Neb. 437, 476 N.W.2d 822 (1991), and thus will not be found unless such is made necessary by the evident intent of the Legislature. *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 471 N.W.2d 398 (1991). Moreover, in order to bring the doctrine into play, the later statute must be unavoidably repugnant to the earlier statute. *Hammond v. City of Broken Bow, supra*.

There is nothing in § 42-365 which is repugnant to § 25-217, for § 42-365 deals not with when an action is commenced, but with what an order of modification may affect. Commencing a new action is different than affecting the rights and obligations

accruing under an existing decree. The language of § 42-365 reflects the Legislature's determination that in the latter circumstance, a party may rely on what the court has decreed at least until receipt of notice that an effort is being made to effect a change.

It is also to be noted that the service language of § 42-365 was adopted at the same time as was Neb. Rev. Stat. § 42-352 (Reissue 1988), which reads, in pertinent part: "A proceeding under sections 42-347 to 42-379 shall be commenced by filing a petition in the district court." 1972 Neb. Laws, L.B. 820, §§ 6 and 19. Even if one were to argue that specifying how a proceeding shall be commenced does not necessarily specify the event which constitutes commencement, a matter we do not decide, the fact remains that the language used in § 42-352 shows that the Legislature well knew at the time it adopted § 42-365 the appropriate words to use had it wished to tie the operative date of a modification to the filing of the petition rather than to the obtaining of service.

The wife's first contention being without merit, we move on to her second and final claim with regard to the district court's ruling. In reliance upon Neb. Rev. Stat. § 25-214 (Reissue 1989), the wife urges that as the husband fled to Maine, the period of his absence from Nebraska may not be counted in determining when he was served. Section 25-214 reads:

> If, when a cause of action accrues against a person, he is out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.

Leaving aside that the record does not disclose when the husband left his home and that, according to the sheriff's return, service was not even attempted until after all of the husband's obligations under the decree had accrued, this matter, as noted earlier, concerns not the commencement of an action, but upon what an order of modification operates.

Consequently, § 25-214 simply does not apply. As recently reaffirmed, in the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *In re Interest of M.J.B., ante* p. 671, 496 N.W.2d 495 (1993); *Curry v. State ex rel. Stenberg, post* p. 695, 496 N.W.2d 512 (1993); *State v. Chambers, ante* p. 124, 493 N.W.2d 328 (1992).

Nonetheless, a party may not lull an adversary into a false sense of security, thereby cause the adversary to subject her or his claim to the bar of the statute of limitations, and then plead as a defense the very delay caused by the first party's conduct. See *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988).

The operation of this equitable doctrine of estoppel, or estoppel in pais, was recently illustrated in *Reifschneider v. Nebraska Methodist Hosp.*, 233 Neb. 695, 447 N.W.2d 622 (1989). We therein held that because the plaintiff knew of the period of limitations and had concluded approximately 6 months before its expiration that she would not get a satisfactory settlement unless she filed suit, the defendant was not estopped from asserting the limitations defense notwithstanding that it had for a time paid plaintiff's expenses. In so ruling, we reaffirmed that the elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. See, also, *First United Bank v. First Am. Title Ins. Co., ante* p.

640, 496 N.W.2d 474 (1993).

Since the husband neither said nor did anything which the wife even claims induced her to delay the issuance of summons, the doctrine does not apply. It is the lack of improper inducement on the part of the husband and the reciprocal lack of reliance on the part of the wife which distinguish the case before us from those cases in which the doctrine came into play. See, *Muller v. Thaut, supra* (existence of a fact issue as to whether the defendant concealed the cause of death prevented the entry of summary judgment on the basis of limitations defense); *State Farm Mut. Auto. Ins. Co. v. Budd*, 185 Neb. 343, 175 N.W.2d 621 (1970) (reliance of plaintiff upon repeated assurances of defendant's insurer that it would honor plaintiff's property damage subrogation claim when the insurer settled related personal injury claim prevented insurer from asserting a limitations defense); *MacMillen v. A.H. Robins Co.*, 217 Neb. 338, 348 N.W.2d 869 (1984) (fraudulent concealment of known danger prevented assertion of limitations defense); *Atlas Corporation v. Magdanz*, 130 Neb. 519, 265 N.W. 743 (1936) (payee of note who made payments and wrote on note that it was extended estopped from asserting limitations defense.)

Inasmuch as the wife is as a matter of law foreclosed from having the decree modified, the district court correctly sustained the husband's motion for summary judgment. *First United Bank v. First Am. Title Ins. Co., supra*; *Jaramillo v. Mercury Ins. Co., ante* p. 223, 494 N.W.2d 335 (1993).

Affirmed.